# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## VIRGIL I. ASHBURY V. CITY OF NORFOLK.

March 21, 1929.

The opinion states the case.

*James G. Martin* and *John C. Davis*, for the plaintiff in error.

*R. W. Peatross* and *John S. Rixey*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The plaintiff, Ashbury, was struck and injured while on the sidewalk on the north side of Main street near its intersection with the sidewalk on the east side of Church street, Norfolk, by one of a pair of horses which belonged to the city, which had been hitched to a trailer, then being used for the collection of garbage on Main street. Just before the team reached Church street, the king pin which fastened the double-bar broke, which allowed the singletrees to fall on the heels of the horses, and this caused them to run away.

There was a verdict for the plaintiff which the trial court set aside as contrary to the law and the evidence, and entered final judgment for the defendant, of which judgment the plaintiff complains.

It is unnecessary for us to recite the facts in detail. There was no conflict in the evidence. The plaintiff relies solely upon the fact that the king pin broke, while the evidence of the city tended to show that it

had exercised due care, so that had there been a verdict in favor of the. defendant it should not have been disturbed.

That, however, is not the question which is argued here. The defendant city demurred to the notice of motion, which alleged that the wagon and horses were being operated by the defendant in "the cleaning of its streets and the removal of the trash from the streets," which horses and wagon were operated by the defendant not in a governmental capacity but in its corporate functions, and that the negligence of the city was the cause of the injury.

The grounds of demurrer were, that the notice of motion shows on its face that the horses and wagon belonging to defendant were at the time complained of being operated by the city of Norfolk in its governmental capacity.

The trial court overruled this demurrer, and there is a cross-assignment of error as to this by the city.

The evidence showed clearly that the horses and wagon were being operated at the time in the removal of garbage which had been placed in cans on the edge of the sidewalk.

It is not apparent whether there was any change of view as to the demurrer, but it seems to be clear that the verdict was set aside because the trial court was of opinion that in the removal of garbage from the streets of the city the defendant was acting in its governmental capacity, and therefore that the city is not liable. This then raises the precise question to be here determined.

The text-writers indicate that in the removal of garbage the municipality acts in a governmental capacity and therefore that it is not liable for negligence. 19 R. C. L., section 406, page 1128.

■ In 25 Cyc. 1305, it is said: "The performance of duties that relate to the preservation of the public health and the care of the sick is likewise of concern to the public as a whole; in executing this function the municipality and the officers through whom it acts perform governmental, or public, as distinguished from mere corporate, or private, duties, for which there is no liability, and the officers and agencies engaged in the performance of such duties are public officers for whose torts the municipal corporation is not responsible."

■ Many recent cases on the subject have been collected in the note to *Harris* v. *District of Columbia* (256 U. S. 650, 65 L. Ed. 1146, 41 Sup. Ct. 610), 14 A. L. R. 1471. In that case the Supreme Court of the United States held that the sprinkling of streets to keep down dust for the promotion of the comfort and health of the general public is a public or governmental act, as distinguished from a private or municipal act, which exempts the District of Columbia from liability for injuries caused by one of its employees while engaged therein. We find this in the opinion in that case: "It is established doctrine that, when acting in good faith, municipal corporations are not liable for the manner in which they exercise discretionary powers of a public or legislative character. A different rule generally prevails as to their private or corporate powers. Dillon, Mun. Corp. (5th ed.), section 1626 *et seq.*, and cases cited. Application of these general principles to the facts of particular cases has occasioned much difficulty. The circumstances being stated, it is not always easy to determine what power a municipal corporation is exercising. But nothing else appearing, we are of opinion that, when sweeping the streets, a

municipality is exercising its discretionary powers to protect public health and comfort, and is not performing a special corporate or municipal duty to keep them in re par. This conclusion, we think, accords with commoni observation, harmonizes with what has been declared heretofore concerning liability of the District of Columbia for torts, and is supported by well-considered cases." *Weightman* v. *Washington* (1861), 1 Black, 39, 17 L. Ed. 52; *Barnes* v. *District of Columbia* (1875), 91 U. S. 340, 551, 23 L. Ed. 440, 443; *District of Columbia* v. *Woodbury* (1890), 136 U. S. 430, 10 Sup. Ct. Rep. 990, 34 L. Ed. 472; *Love* v. *Atlanta*, 95 Ga. 129, 22 S. E. 29, 51 Am. St. Rep. 64; *Conelly* v. *Nashville*, 100 Tenn. 262, 46 S. W. 565; *Haley* v. *Boston*, 191 Mass. 291, 77 N. E. 888, 5 L. R. A. (N. S.) 1005; *Bruhnke* v. *La Crosse*, 155 Wis. 485, 144 N. W. 1100, 50 L. R. A. (N. S.) 1147.

There is some conflict in the cases, but the weight of authority quite certainly is to the effect that the removal of garbage by a municipality is a governmental function, which is designed primarily to promote public health and comfort, and hence that the municipality is not liable therefor in tort when the negligence which is charged occurred in the performance of that particular function, and no nuisance is thereby created.

This appears to be the rule enforced not only in the Federal courts but also in California, Georgia, Iowa, Kentucky, Massachusetts, Missouri, North Carolina, New Hampshire, New Jersey, Pennsylvania, Tennessee and Wisconsin. The contrary rule seems to prevail in Colorado, Illinois, Mississippi, New York and Texas.

We cite some of the cases from State courts which appear to us to state and enforce the correct rule here applicable.

In *City of Louisville* v. *Carter* (1911), 142 Ky. 443, 134 S. W. 468, 32 L. R. A. (N. S.) 637, it appeared that while a sprinkling cart belonging to the city was being driven through the streets, with a wagon used by the street cleaning department attached to it, the wagon injured the boy. It was conceded that if the injury had been inflicted by the sprinkler while in use for sprinkling the streets, no recovery could have been had; but it was argued that inasmuch as the sprinkler was not being used for sprinkling purposes, but to haul another wagon, a different rule was applicable. The court said this: "We are unable to draw the distinction which appellee's counsel would make between an injury resulting from the negligent use of the sprinkler while actually sprinkling, and one while the sprinkler was being drawn through the city from one part thereof to another. In the numerous cases that have been decided by this and other courts, holding that a city is not liable for an injury that resulted through the negligence of its employees engaged in the discharge of any of those duties commonly called 'governmental functions,' the opinion in each is rested upon the idea that, as the city is a branch of the State government, an arm of the State, it is against public policy to permit it to be sued for the negligence of those of its servants engaged in the discharge of some duty which has for its aim the protection of the life, health, or property of the citizens."

In *Conelly* v. *Nashville* (1898), 100 Tenn. 262, 46 S. W. 565, it appeared that while plaintiff was sitting in a buggy standing near the sidewalk of one of the streets of the city, the driver of a sprinkling cart in the service of the city negligently caused it to collide with the wheels of the buggy, so that the animal hitched thereto became frightened, overturned the buggy and

inflicted the injury complained of. The court sustained a demurrer to the plaintiff's declaration, among other things saying: "An ordinance of the city directing the sprinkling of the streets * * is one that is sanitary in its character, passed in view of the health and comfort of the general public. While engaged in doing work under such an ordinance, the municipality is discharging a governmental duty, and is not responsible for the carelessness of the agent or agencies so employed."

In *Love* v. *Atlanta* (1894), 95 Ga. 129, 22 S. E. 29, 51 Am. St. Rep. 64, it appeared that while the plaintiff was passing along the streets of a city, in the exercise of proper care and without fault on his part, a mule hitched to one of the garbage carts of the city was negligently permitted to run away, and, while so running, collided with the buggy of the plaintiff, causing serious injury. It was also alleged that the driver of the cart was a small negro boy, wholly incompetent to the discharge of the duty, and that the animal so employed was vicious, dangerous and liable to run away. It was shown that the mule and cart causing the damage were in use by the city under the direction of the health board of the city, and that the servant of the city charged with driving the cart, was then employed in cleaning the streets and removing therefrom such putrid and offensive substances as usually accumulate in the streets of densely populated cities, and which it was necessary to remove because unless removed they endangered the public health. Under these facts the court said: "With respect to matters concerning the public health, * * * there is no serious conflict of reason, opinion, or authority upon the correctness of the proposition that the preservation of the public health is one of the duties that

devolve upon the State as a sovereign power. It is such a duty as, upon proper occasion, justifies the exercise of the right of eminent domain and the demolition of structures which endanger or imperil the public health. In the discharge of such duties as pertain to the health department of the State, the State is acting strictly in the discharge of one of the functions of government. If the State delegate to a municipal corporation, either by general law or by particular statute, this power, and impose upon it within its limits the duty of taking such steps and such measures as may be necessary to the preservation of the public health, the municipal corporation likewise, in the discharge of such duty, is in the exercise of a purely governmental function, affecting the welfare not only of the citizens resident within its corporation, but of the citizens of the Commonwealth generally, all of whom have an interest in the prevention of infectious or contagious diseases at any point within the State, and in the exercise of such powers is entitled to the same immunity against suit as the State itself enjoys; * * * it can make no difference in principle as to the character of the agents employed in the discharge of this duty with respect to the public health. The principle of nonliability rests upon the broad ground that, in the discharge of its purely governmental functions, a corporate body to which has been delegated a portion of the sovereign power is not liable for torts committed in the discharge of such duties and in the execution of such powers."

 The same holding is substantially repeated in *Savannah* v. *Jordan* (1914), 142 Ga. 409, 83 S. E. 109, L. R. A. 1915C, 741, Ann. Cas. 1916C, 240, in which this is said: "It is not the character or name of the agent who executes the duty of removing the cause of

discomfort and ill health to the public which fixes the character of the duty performed, but it is the act itself which determines whether it be governmental or ministerial." This statement is made with reference to the removal of street sweepings.

In *City of Louisville* v. *Hehemann* (1914), 161 Ky. 523, 171 S. W. 165, L. R. A. 1915C, 747, the court said, *obiter:* "In the collection and disposition of garbage, undoubtedly the city acts for the public health, and discharges a governmental function. In this regard, it is an agent or arm of the Commonwealth, and, for that reason, is absolved from liability for the negligence of its employees."

In *Condict* v. *Jersey City* (1884), 46 N. J. L. 157, the court said this: "The removal of ashes and garbage placed by the inhabitants in boxes and barrels upon the sidewalks is part of the duties of this board in their supervision over and care for the cleanliness of the streets. A dumping ground and horses, carts and drivers, to carry the ashes and garbage to the place of deposit, are necessary to enable the board to carry into execution its public duties in this respect; and the board is supplied with horses and carts, and authorized to employ drivers at public expense, for this purpose. It is the settled law of this State that an action will not lie in behalf of an individual who has sustained a special damage from the neglect of a municipal corporation to perfrom a public duty, unless the right to sue for such injury is given by statute. * * * In the execution of the duties of a municipal government the services of inferior officers having only ministerial duties to perform, and of workmen and other employees, are required for the transaction of its business. * * It has been held that, with respect to such officers and employees, the doctrine of *respondeat superior* does not

apply. * * * To maintain in its integrity the doctrine of our courts that a municipal corporation is not amenable to actions for negligence in the performance of public duties, it is necessary to maintain also that persons employed by the corporation in the execution of public duties are mere agencies or instruments by which such duties are performed, and that the doctrine of *respondeat superior* does not apply to such employments. To impose upon the corporation liability for the negligence of such employees would indirectly fix upon the corporation a liability from which it is by law, on consideration of public policy, exempted."

In *Bruhnke* v. *City of La Crosse* (1914), 155 Wis. 485, 144 N. W. 1100, 50 L. R. A. (N. S.) 1147, it was held that the defendant city was not liable for an injury to a child caused by the negligence of a driver of a city dump wagon, which was being used for street-cleaning purposes.

This is the Massachusetts rule also: *Haley* v. *City of Boston*, 191 Mass. 291, 77 N. E. 888, 5 L. R. A. (N. S.) 1005.

In *Bolster* v. *City of Lawrence*, 225 Mass. 390, 114 N. E. 722, L. R. A. 1917B, 1285, Mr. Chief Justice Rugg undertakes to clarify the discussion by his helpful statement: "The difficulty lies not in the statement of the governing principles of law, but in their application to particular facts. The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit. If it is, there is no liability, if it is not, there may be liability. That it may be undertaken voluntarily not under compulsion of statute is not of consequence."

In *Behrmann* v. *City of St. Louis* (1918), 273 Mo. 578, 201 S. W. 547, where it appeared that a city

garbage collector negligently left his team standing near the foot of a ladder on which the plaintiff was working, and the team started, causing the ladder to fall and injure the plaintiff, it was held that the municipality was not liable. This on the authority of the case of *Cassidy* v. *City of St. Joseph* (1912), 247 Mo. 197, 152 S. W. 306.

The same rule was applied in *Connor* v. *City of Manchester* (1905), 73 N. H. 233, 60 Atl. 436, where the plaintiff offered to prove that the decedent was employed by the street and park commissioners of the city to drive a horse hitched to a cart, used in removing dirt, rubbish and ashes from the streets of the city and from receptacles placed on or near the streets by the abutting owners, and that while so employed he was run over and killed by reason of the unsafe character of the horse, but the city was held not liable.

Among the recent and convincing cases is *Scibilia* v. *City of Philadelphia* (1924), 279 Pa. 549, 124 Atl. 273, 32 A. L. R. 981, in which it is held that the city of Philadelphia was not liable for injuries caused by the driver of a truck who is a member of the street-cleaning department, at a time when he is engaged in conveying ashes to a city dump as part of the gratuitous undertaking of the city to collect and dispose of rubbish, although the city may receive a small incidental revenue through the disposal of refuse gathered. In the course of that opinion this is said by Moschzisker, Ch. J.: "The care of public health is undoubtedly a subject-matter of general concern, and how it shall be accomplished is a public question. When the legislature leaves its accomplishment to any degree in the hands of the several municipalities, they act as governmental agencies, and not as business corporations, in the performance of the power placed at their disposal, or of

the duty thus put on them, whichever it may be. That cleanliness makes for health must be accepted as a truism, and that the regular, systematic gathering by municipalities of refuse, including ashes, and the proper, orderly and efficient disposal thereof, promote cleanliness, is apparent. Such gathering and disposal of refuse is primarily a health measure, the duty to perform which might have been placed on the health department; the fact that it was put elsewhere makes it none the less a health measure, and, hence, a public or governmental function within the police power."

In *James* v. *City of Charlotte* (1922), 183 N. C. 630, 112 S. E. 423, 21 N. C. C. A. 977, it is held that the collection of garbage by a municipality is a governmental function, and the fact that a collection charge was made against the property owner is immaterial.

So, in *Manning* v. *City of Pasadena* (1922), 58 Cal. App. 666, 209 Pac. 253, the fact that a municipality collecting garbage sold part of it at the incinerator si held not to make the municipality liable for the negligence of a garbage collector.

The Alabama court made a similar ruling in *Tuscaloosa* v. *Fitts* (1923), 209 Ala. 635, 96 So. 771, with respect to the negligence of the driver of a vehicle used in collecting garbage and trash from the streets and hauling it to a municipal crematory.

The learned counsel for the plaintiff in error realizes the significance of the mass of authority which supports the conclusion of the trial court, but insists that this court has, in the case of *Jones Adm'r* v. *City of Richmond,* 118 Va. 612, 88 S. E. 82, aligned itself with the minority in holding that in the performance of such a duty as the removal of garbage a city is not performing a governmental function. In this he is mistaken. The court decided in that case that the city

of Richmond, while engaged in grading and improving its streets and in removing the earth to a place of deposit, was exercising a ministerial duty, as distinguished from a governmental function, and was therefore liable for an injury resulting from the negligent manner in which that duty was performed. While there is a dictum in the case which supports the view maintained for the plaintiff in error, citing the case of *Quill* v. *New York*, 36 App. Div. 476, 55 N. Y. S. 889 (removing ashes from streets) with approval, this dictum should not be construed as committing this court to the minority view. The distinction between that case and this is apparent. Constructing, grading and improving streets by municipalities is, we believe, now universally held to be a ministerial and mandatory duty which is distinguishable from the governmental function of protecting the public health by the removal of garbage.

Many cases have been decided since *City of Richmond* v. *Long's Adm'rs*, 17 Gratt. (58 Va.) 375, 94 Am. Dec. 461, but the soundness of the rules there announced seems to us quite apparent and applicable. There it was held that municipal corporations, like public officers of the Commonwealth, when exercising their political, discretionary and legislative authority, are not responsible for the misconduct, negligence or omissions of the agents employed, and the doctrine of *respondeat superior* does not apply, and that the city of Richmond was not responsible for the loss of a slave admitted to the city hospital, the ground of the liability alleged being the negligence of the agents of the city at the hospital. There is a caution in that case worthy of attention and repetition in this: "It is usually unsafe and hazardous to seek to classify adjudicated cases upon any complex question of law, and to extract

from them rules of general application. So much of the reasoning in such cases is due to their diversities, that error is likely to creep into any generalization of them, and vitiate the results of an analysis that would ambitiously seek to reduce them to a system, and tempt the incautious inquirer to overlook the differences of fact that modify and control their application. It is, therefore, wiser in the main to investigate and decide each case upon its own peculiar state of facts, than by too general statements or deductions to incur the risk of being betrayed into too abstract reasoning.''

It is better first to find the facts of the case in judgment, and then to discern and adhere to principles founded upon reason which have stood the test of time. These principles are generally clear and reasonable, while some of the cases are illogical, inconsistent and confusing.

In a modern instance (*Scibilia* v. *Philadelphia, supra*), it has been suggested that, as local governments are so constantly assuming or being vested with new duties, the distinction between purely public functions which are certainly within the police power, and those private business enterprises which are not, is becoming increasingly difficult to maintain. This may be true, but if so it is doubtless because of our bad habit of counting cases instead of adhering to fundamental rules.

The conclusion of the trial court that the removal of garbage by a city is a public governmental function is well supported by reason and authority, and hence we shall affirm the judgment.

*Affirmed.*