## Richmond

ROBERT A. FENON, AN INFANT, ETC. V. CITY OF NORFOLK.

June 11, 1962.

Record No. 5421.

Present, All the Justices.

*Bernard Levin* and *Jay M. Ball*, for the plaintiff in error.

*Leonard H. Davis*, City Attorney (*Virgil S. Gore, Jr.*, Assistant City Attorney, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Robert A. Fenon, an infant, filed a motion for judgment through Beverly Wiggins, his next friend, against the City of Norfolk, in which he sought to recover damages for personal injuries sustained when the automobile in which he was riding as a guest passenger struck a tree which had fallen into a street during a storm.

Fenon alleged that the City "was under obligation to use reasonable care to maintain and keep its streets at all times in reasonably safe conditions for travelling," and that the City negligently failed

to keep the street in question "in a reasonably safe condition for travel in the usual mode," in that it placed a barricade therein at the fallen tree and left the same without lights or proper warning to approaching traffic, by reason whereof he, while riding as a guest passenger, collided with the barricade and was injured.

In response to the motion for judgment the City filed its answer and grounds of defense, and in addition filed a special plea in bar. The plea in bar asserted that the court should not take further cognizance of the plaintiff's motion and should dismiss the action for the reasons:

"1. That, on the 12th day of September, 1960, the day of the plaintiff's alleged accident and injury, there occurred in the City of Norfolk a certain act of God which was a violent hurricane, with winds of very high velocity and a great amount of precipitation, said hurricane being known as 'Hurricane Donna'.

"2. That said Hurricane Donna did cause such great damage and destruction as to constitute a public disaster and create an emergency situation.

"3. That the policemen and other officers, agents and employees of the City of Norfolk were caused to expend great effort and to work over a long period of time in an attempt to alleviate the damage and destruction caused by Hurricane Donna.

"4. That, while the City denies all acts of negligence charged against it in plaintiff's motion for judgment, even if said acts should be shown, they were included among the acts of the officers, agents and employees of the City of Norfolk performed in an attempt to alleviate the public disaster caused by Hurricane Donna and they, as well as the other acts performed by the officers, agents and employees of the City of Norfolk for the purpose of alleviating the damage and destruction resulting from the public disaster caused by Hurricane Donna, were performed for a public and governmental purpose, in the emergency situation resulting from the public disaster, and the City of Norfolk is not liable therefor, the City being immune from liability for negligence in the performance of a governmental function."

At the conclusion of plaintiff's evidence concerning the happening of the accident the City moved to strike on the grounds (1) that no negligence on the part of the City had been shown; (2) that even if it might be said that the plaintiff's evidence showed negligence on the part of the City, such negligence was remote and was not a proximate cause of the accident; (3) that at the time of the accident the City

was performing a governmental function and was immune from liability even if it might be said that the City was guilty of negligence in the performance of that function; and (4) that the evidence of the plaintiff showed that he was guilty of contributory negligence which barred his recovery.

After hearing argument on the motion the court stated: "I don't think that there is enough evidence in the record right now to show the severity of the storm. * * * We have here three things that absolutely tie in together which it would seem to the court would be the proximate cause of this accident: drinking; a broken-down car with lights that did not comply with the law—otherwise he could have seen more than 15 feet; and that if the City hadn't worked at all, hadn't gotten around to this tree, this accident would still have happened. The Court of Appeals has said that 'proximate cause' means that cause without which the accident would not have happened. I will defer any ruling on the motion until the court is satisfied of the emergency."

Whereupon the City introduced evidence as to the severity of the storm and the damage wrought by it, renewing its motion to strike plaintiff's evidence on the grounds previously stated, at which time the court inquired of the plaintiff whether or not he wished to rebut the evidence which the City had introduced regarding the severity of the hurricane, and it was stipulated that if the plaintiff's rebuttal witness were to testify he would say that he was a taxicab operator and during the hurricane he was able to operate as a cab driver. Thereupon the court sustained the City's motion to strike plaintiff's evidence and, on motion of the City and over the objection of the plaintiff, entered summary judgment.

We granted Fenon a writ of error.

There is only one question here involved, *i.e.:* Was the City performing a governmental function or a proprietary function in an effort to clear its streets on this occasion?

The evidence shows that on September 12, 1960, the City was struck by Hurricane Donna. Around 5:00 a.m. on that day the winds were well up in the hurricane force range, and gusts up to 120 miles an hour were recorded by the Army Base located near the scene of the accident. The winds came during the night of September 11 and the early morning of September 12. They were strongest in the City at about 7:14 a.m. on the morning of the 12th, and began to diminish at about 8:00 a.m.

The hurricane was preceded and accompanied by heavy rainfall. On the 12th of September 3.59 inches of rain fell in the area.

More than 1,000 trees owned by the City were blown down by the hurricane, approximately 800 of which, ranging in size from 5 to 36 inches in diameter, were thrown into the streets. This figure did not include trees which were damaged but remained standing. At least 75 per cent of the fallen trees were impeding vehicular traffic. It required two weeks to completely clear the streets of trees and debris.

The hurricane put out of commission the electric service to approximately 80,000 of the Virginia Electric and Power Company's 150,000 customers in the area, and this company, after supplementing its local repair crews with crews from all over the State of Virginia and from Baltimore, Maryland, which worked all the daylight hours, had not been able to restore service to between 500 and 1,000 of its customers in the City five days after the hurricane.

There were approximately 15,000 telephones knocked out, taking 48 additional line crews and 40 one-man installation crews to restore telephone service, which was accomplished by temporary repairs on September 16. Motorbus transportation was completely stopped in the City.

The employees and equipment of four divisions of the City were put to work clearing the streets of trees and debris. Many of these employees did not normally perform work in connection with the streets but because of the gigantic clean-up job with which the City was confronted they were used to supplement the regular employees in the street cleaning division.

After the center of the hurricane had passed on the morning of September 12, approximately 400 employees of the City, with all available equipment, were assigned to clearing the streets of the trees and debris.

At about 10:00 a.m. on September 12, two City laborers arrived at Jamestown Crescent and Carroll Place, the scene of the accident. Their assignment was to clear the street. There were 25 to 35 trees down in Jamestown Crescent, a short street.

At this intersection the men found a large tree uprooted and lying in Jamestown Crescent so that it blocked the westbound half or both of the lanes on the northern side of the street. They trimmed off the limbs so that the westbound lane next to the center of the street was clear for traffic. They piled the limbs near the curb but

the trunk of the tree remained projecting into Jamestown Crescent as it was too large for them to handle.

The trunk was left projecting approximately "a car's width" into Jamestown Crescent. A wooden sawhorse was placed about 15 feet from the trunk of the tree before they left it that morning. They had no lights with them and left no lights there. This location was the scene of the accident which occurred at approximately 7:00 p.m. on September 12, when the car in which plaintiff was riding as a guest passenger struck the barricade and tree trunk, causing the injuries complained of.

In Virginia a municipal corporation is clothed with a two-fold function—one governmental and the other proprietary. A municipality is immune from liability for failure to exercise or for negligence in the exercise of its governmental functions. It may be liable, just as a private individual or corporation, for the failure to exercise or for negligence in the exercise of its proprietary functions. *Hoggard* v. *City of Richmond*, 172 Va. 145, 200 S. E. 610.

Therefore, if the operations of the City of Norfolk, during the course of which the plaintiff was injured, were being performed by the City in the exercise of a governmental function, the City is immune from liability and the plaintiff cannot recover. The plaintiff does not deny this but asserts that the City was operating in a proprietary capacity at the time. Plaintiff argues that the City was maintaining its streets, specifically Jamestown Crescent at Carroll Place. It is not contended that the street itself was defective but that the tree which the hurricane had uprooted and thrown into the street so that it blocked both the westbound traffic lanes was an obstruction with which the City had to cope on the street maintenance, proprietary basis.

A study of the authorities relied on by plaintiff, including *Burson* v. *City of Bristol*, 176 Va. 53, 10 S. E. 2d 541; 63 C.J.S., Municipal Corporations, § 807, page 127; 25 Am. Jur., Highways, § 420, page 714; and 19 McQuillan, Municipal Corporations, § 54.94, will reveal that all contain abstract statements not relevant to the issue here.

In the instant case the damage wrought by the hurricane involved the entire City of Norfolk. The City, in the midst of the emergency and before there was time for survey and appraisal of the situation, was engaged in removing from its streets the wreckage and debris thrown there by the hurricane. The streets were being made reasonably passable in order that electric equipment could get through and service could be restored to the thousands who were without it;

so that lights, stoves, refrigerators, water pumps, and sewerage facilities which were dependent upon electricity could again function; so that telephone wires could be repaired and communication restored; so that transportation could again flow. The work was being done for the purpose of protecting the general public health and safety from the damage produced by the hurricane.

We adhere to our ruling in *Ashbury* v. *Norfolk*, 152 Va. 278, 288, 147 S. E. 223, where the removal of garbage by the City was determined to be a public governmental function. There we quoted with approval from *Bolster* v. *City of Lawrence*, 225 Mass. 387, 114 N. E. 722, L.R.A. 1917B 1285: "The difficulty [in cases of this kind] lies not in the statement of the governing principles of law, but in their application to particular facts. The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit. If it is, there is no liability, if it is not, there may be liability. That it may be undertaken voluntarily not under compulsion of statute is not of consequence."

It is unnecessary to prolong this opinion. Chief Justice Prentis, in his opinion in *Ashbury* v. *Norfolk, supra*, with the authorities there cited, has fully dealt with the subject of governmental functions of a city as contrasted with proprietary functions, and we adhere to the logical reasoning contained therein.

It is difficult to envision an activity of a city which would be more for the common good of all—more in the interest of public health and safety—than is here presented; and it is equally difficult to conceive of an activity of a city which is farther removed from the elements of special corporate benefit or pecuniary gain, or from a duty enjoined upon it in consideration of privileges granted to and accepted by it.

With the cleaning of streets and the removal therefrom of garbage and rubbish having been held to be a governmental function when performed in normal, everyday living, the cleaning of streets and the removal therefrom of tree wreckage and other debris resulting from such a disaster as here disclosed must with all the greater force of logic be held a governmental function.

The trial court's decision that the City was here engaged in a public governmental function is well supported by facts, reason, and authority, and the judgment is

*Affirmed.*