## 𝔎𝔦𝔠𝔥𝔪𝔬𝔫𝔡

VIRGINIA ELECTRIC AND POWER COMPANY v. HAMPTON REDEVELOP-
MENT AND HOUSING AUTHORITY.

TERRY D. VINSTON, AN INFANT, ETC., ET AL. v. HAMPTON REDEVEL-
OPMENT AND HOUSING AUTHORITY.

June 11, 1976.

Record Nos. 750893 and 750894.

Present, All the Justices.

*Douglas W. Davis* (*R. Kenneth Wheeler; Frederic L. Moschel; Hunton, Williams, Gay & Gibson; Cumming, Andrews, Watkins & Chase, Ltd.*, on briefs), for plaintiff in error in Record No. 750893.

*James B. Sawyer, Jr.* (*Joseph Smith, Ltd.; James, Richardson, James, Sawyer & Quinn*, on brief), for plaintiffs in error in Record No. 750894.

*J. Warren Stephens* (*W. Stephen Moore; Stephens & Wentworth; Moore & Hawkins*, on brief), for defendant in error in Record Nos. 750893 and 750894.

CARRICO, J., delivered the opinion of the court.

The question for decision in this case is whether a municipal housing authority, created pursuant to the Housing Authorities Law (Code §§ 36-1, *et seq.*), is immune from liability for negligence in the operation and maintenance of a housing project under its control.

In the court below, the question arose when the Hampton Redevelopment and Housing Authority interposed special pleas in bar to two motions for judgment brought against it and Virginia Electric and Power Company by Terry D. Vinston and Keith E. Burton, infant plaintiffs. The motions for judgment alleged that the infant plaintiffs were residents of Lincoln Park Project, a housing development owned and operated by the Housing Authority in the City of Hampton, and that they were injured when they came into contact

with an electric "switching point box," installed and maintained on project property by VEPCO. The motions further alleged that the Housing Authority and VEPCO were negligent with respect to the location, installation, and maintenance of the box.

The Housing Authority's special pleas asserted that the "Commonwealth of Virginia cannot be sued for torts without its consent which consent has not been granted;" that the Authority was "a governmental entity and a political subdivision and arm of the Commonwealth" performing "governmental functions;" and that the Authority was "thus immune from any action predicated on tort liability." After a hearing, the trial court sustained the pleas and dismissed with prejudice each of the actions against the Housing Authority. The infant plaintiffs and VEPCO seek reversal of the judgment of dismissal.

Our initial inquiry is whether, as asserted in the special pleas, the Housing Authority is entitled to the same immunity from tort liability that is enjoyed by the Commonwealth. If the Authority does enjoy that same immunity, our inquiry would end and we would affirm the sustaining of the special pleas.

■ It is clear that no action for tort may be maintained against the Commonwealth unless it consents and that no statute exists granting the necessary consent. *Sayers v. Bullar*, 180 Va. 222, 225, 22 S.E.2d 9, 10 (1942). It is also clear that the General Assembly can create a separate entity as an agency of the Commonwealth to perform a function of state government and that such entity will be clothed with the Commonwealth's immunity from tort liability. *Elizabeth River Tunnel District v. Beecher*, 202 Va. 452, 456-57, 117 S.E.2d 685, 689 (1961).

■ Obviously, a municipal housing authority is not the Commonwealth itself. But is it, as the special pleas asserted, an "arm" or agency of the Commonwealth and as such entitled to the Commonwealth's immunity from tort liability?

While the Housing Authorities Law provides for a housing authority in each city and county and denominates the entity a political subdivision of the Commonwealth, such an authority does not come into existence by state initiative; local activation, optional with each locality, is required (Code § 36-4). Once a housing authority is activated by local action, the local governing body appoints commissioners to manage the authority (§ 36-11); fixes the compensation of the commissioners (§§ 36-11.1, -11.1:1); removes commissioners for cause (§ 36-17); approves projects proposed by the authority (§§ 36-

19.1, -19.2); and directs liquidation of authority projects (§ 36-7.1).

We believe these statutory provisions dictate the conclusion that a municipal housing authority is an entity purely local in nature and not a state agency performing a function of state government. And, as we shall now demonstrate, a municipal housing authority is not entitled to the same immunity from tort liability that is enjoyed by the Commonwealth.

For certain purposes, local political subdivisions, similar to the entity involved here, are treated as municipal corporations. *Hampton Roads Sanitation District Commission* v. *Smith*, 193 Va. 371, 377, 68 S.E.2d 497, 501 (1952). In *Smith*, we said that two basic factors must be considered in determining whether a particular entity occupies the status of a municipal corporation: first, what attributes of municipality the entity possesses; and, second, in light of this initial consideration, the particular purpose for determining whether a municipal corporation is present.

In *City of Richmond* v. *Richmond Metropolitan Authority*, 210 Va. 645, 647, 172 S.E.2d 831, 832 (1970), we listed six attributes pertinent to a determination that a particular entity occupies the status of a municipal corporation. A municipal housing authority possesses all those attributes. A municipal housing authority is a political subdivision of the Commonwealth with public and corporate powers (Code §§ 36-4, -19); it serves a public purpose (§ 36-2); it has a common seal, may sue and be sued, and may enter into contracts and acquire, hold, and dispose of its revenue and its real and personal property (§ 36-19); it has the power of eminent domain (§ 36-27); it may borrow money and issue tax exempt bonds, with interest on such bonds occupying the same status under tax laws as the bonds of other political subdivisions of the state (§§ 36-29, 58-151.013(c)(2)); and its corporate management is vested in a board or commission (§§ 36-11, -12).

This brings us to consideration of the particular purpose for determining whether a municipal corporation is present in this case. Generally, if the pivotal point under consideration involves a matter of procedure, there is more likelihood that a particular entity will be declared a municipal corporation; but if a point of substantive law is involved, it is less likely that the entity will be declared a municipal corporation. *Hampton Roads Sanitation District Commission* v. *Smith*, *supra*, 193 Va. at 377, 68 S.E.2d at 501.

This rule, however, is not inflexible. In *Richmond Metropolitan Authority*, *supra*, we declared the particular local entity there in-

volved a municipal corporation for tax refund purposes under Code § 58-822, which provided for a proration of taxes whenever property is acquired by the state or any county or municipality thereof. We perceive no valid reason for declaring that an entity occupies the status of a municipal corporation for tax refund purposes and not declaring that a similar entity occupies the same status for purposes of determining its immunity from tort liability. Indeed, for purposes of uniformity in determining tort immunity, a municipal housing authority should be held to occupy the same status as the municipality which brings it into existence and oversees its activities. We so hold.

In Virginia, a municipality is not entitled to the same immunity from tort liability that is enjoyed by the Commonwealth. A municipality acts in a dual capacity, the one governmental and the other proprietary. In failing to perform or in negligently performing governmental functions, the municipality is immune from tort liability. With respect to proprietary functions, however, it is not so immune. *Taylor* v. *City of Newport News*, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973); *Fenon* v. *City of Norfolk*, 203 Va. 551, 555, 125 S.E.2d 808, 811 (1962).

We do not decide in this case whether other functions of a municipal housing authority are governmental or proprietary. We decide only in which category to place the operation and maintenance of a municipal housing project.

The final focus of our inquiry, then, is whether the municipal housing authority involved in this case exercised a governmental or a proprietary function in operating and maintaining the housing project where the infant plaintiffs were injured. The trial court held that the Housing Authority's operation of the project would "obviously be, as a normal matter, a proprietary function." The court further held, however, that a provision of the Housing Authorities Law, Code § 36-2(1) converted the Authority's operation into a governmental function, rendering the Authority immune from tort liability.

Code § 36-2(1) provides as follows:

"It is hereby declared that the clearance, replanning and reconstruction of the areas in which insanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property

acquired and are *governmental functions of grave concern to the Commonwealth*." (Emphasis added.)

In commenting upon the effect of this Code section, the trial judge stated that the language constituted a legislative declaration that "the functions outlined in Title 36 are governmental functions." The judge also remarked that the court could not "presume that the legislature of Virginia didn't know what governmental functions meant under the law in this Commonwealth."

We have no quarrel with the remarks of the trial judge. The question, however, is whether, in its reference to "governmental functions," the General Assembly meant to grant immunity from tort liability or merely intended to declare that the activities of housing authorities are proper functions *of* government, thereby emphasizing the public purposes of such authorities and reinforcing the justification for the expenditure of public funds for those purposes. We believe only the latter was intended.

To the extent, however, that the statutory language in question might constitute a legislative declaration that, for tort immunity purposes, the activities of a housing authority are governmental functions, the declaration is not conclusive; the courts are not thereby precluded from looking behind the declaration to ascertain the true nature of the functions. *See Hunter* v. *Norfolk Redevelopment and Housing Authority*, 195 Va. 326, 335, 78 S.E.2d 893, 899 (1953). Indeed, in our first encounter with the Housing Authorities Law, in *Mumpower* v. *Bristol Housing Authority*, 176 Va. 426, 447-48, 11 S.E.2d 732, 740 (1940), we considered the predecessor, containing identical language, of present Code § 36-2(1), now in issue. We held that, notwithstanding the legislative declaration of the "public uses and purposes" of the Housing Authorities Law, we would inquire into the true nature of the purposes to determine whether the property of a housing authority was "devoted to public use, so as to support the right of eminent domain." We there upheld the public purpose of the Law. We feel no less free, however, to inquire here into the nature of the operation and maintenance of a municipal housing project to determine whether such activity is truly a governmental function, so as to support the present claim to immunity from liability for negligence.

The Housing Authority does not argue that, without the legislative declaration of "governmental functions," its operation and maintenance of a housing project would be, nonetheless, a govern-

mental function. Neither does the Authority mention, much less criticize, the trial court's finding that the operation of the project would "obviously be, as a normal matter, a proprietary function."

This lack of argument stems, no doubt, from the Authority's awareness that under any interpretation of the rules for determining whether a particular function is governmental or proprietary, the operation and maintenance of a municipal housing project would be classified as proprietary. In operating and maintaining its housing project, the Authority assumes the role ordinarily occupied by a private landlord, *see City of Richmond* v. *Grizzard,* 205 Va. 298, 302, 136 S.E.2d 827, 829-30 (1964), and performs functions which could as well be performed by private enterprise. *See* W. Prosser, LAW OF TORTS § 131, at 980 (4th ed. 1971). The special service performed by the Authority inures to the benefit of a few rather than to "the common good of all." *See Ashbury* v. *City of Norfolk,* 152 Va. 278, 288, 147 S.E. 223, 226 (1929). And the necessity for the service bears only incidental relation to the protection of the life, health, property, and peace of the citizens of the whole municipality where the service is performed. *See Fenon* v. *City of Norfolk, supra,* 203 Va. at 556, 125 S.E.2d at 812.

For the reasons assigned, we hold that, in the operation and maintenance of the housing project in question, the Housing Authority was not immune from liability for negligence. Accordingly, the judgment of the trial court will be reversed, the infant plaintiffs' motions for judgment reinstated against the Housing Authority, and the case remanded for further proceedings.

*Reversed and remanded.*