## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Katherine J. Wilshin et al.

v.

City of Fredericksburg

February 19, 1992

Case No. CL91–167

By Judge William H. Ledbetter, Jr.

In this tort action, four homeowners join to sue the City of Fredericksburg for damages caused by a sewage backup on November 29, 1990. The City has filed a demurrer pleading governmental immunity. Also, by special plea, the City has moved that the action be dismissed because of misjoinder of plaintiffs.

### Facts

Because the court is considering a demurrer at this juncture, the facts alleged in the motion for judgment and all reasonable inferences that can be drawn from those allegations are assumed to be true. Thus, the facts recited herein are those contained in the plaintiffs' lawsuit.

The plaintiffs are neighbors, owning three homes on Littlepage Street in the City of Fredericksburg. The City designed and constructed a sanitary sewer system that serves the plaintiffs' homes. The City owns, operates and maintains the system. On or about November 29, 1990, the system "malfunctioned" — i.e., "backed up" or "overflowed" — causing raw sewage to invade the lower levels of the plaintiffs' homes. As a result, the plaintiffs suffered damage.

The plaintiffs gave notice of the incident as required by statute and, obtaining no relief, instituted this action on July 2, 1991.

## Doctrine of Sovereign Immunity

The doctrine of governmental or sovereign immunity has its roots in the semi-religious "divine right of kings." Holding to that concept, it was said that the king could do no wrong; therefore, it was a contradiction in terms to speak of suing him.

The doctrine was Americanized almost immediately after the Revolution. The American judiciary took the view that government, even one without a monarch, is immune from suit as "a rule of social policy." In other words, the state should be protected from burdensome interference with the performance of its functions and its control over public funds, property and instrumentalities. *See* Friend, *Personal Injury Law in Virginia,* § 11.2.1 (1990). Thus, the Commonwealth of Virginia and its political subdivisions, like the federal government, enjoy sovereign immunity from suit except where the Commonwealth has consented to waive that immunity.

This blanket immunity does not apply to cities, however, because municipal corporations are chartered by the General Assembly upon the request of the citizens of a locality to perform both governmental and proprietary functions. 13B M.J., *Municipal Corporations,* § 102. In the performance of its governmental functions, a city is immune from liability for its failure to exercise those functions and for its negligence in performing them. In the performance of proprietary functions, on the other hand, a city is not immune from liability for its negligence. *Fenon v. City of Norfolk,* 203 Va. 551 (1962); *Taylor v. City of Charlottesville,* 240 Va. 367 (1990). Where an activity involves elements of both governmental and proprietary functions, the governmental function controls and the city is immune from liability. *Transportation, Inc. v. City of Falls Church,* 219 Va. 1004 (1979).

In sovereign immunity cases, the difficulty does not lie in the statement of the governing principles of law, recited above, but in their application to particular facts. In Virginia, "the underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit." *Ashbury v. City of Norfolk,* 152 Va. 278 (1929); *Fenon, supra.*

Even guided by this repeatedly-cited test, the subject of governmental functions of a city as contrasted with proprietary functions is complex. There is no simple litmus test or bright-line rule that can be applied to a particular fact situation for easy resolution. Neverthe-

less, the distinction exists and it is the court's duty to find it and apply it.

In their motion for judgment, the plaintiffs allege that the City breached its duty "to provide reasonable sewer service" and "failed to use ordinary care" in "designing and constructing the sanitary sewer system," in "inspecting, maintaining and operating the sewer system," in "removing defects and/or obstructions in the sewer system" and in "keeping the sewer system in good repair." The cause of action is based on the theory of negligence.

Actually, the motion for judgment contains two counts, one sounding in negligence and the other labeled "res ipsa loquitur." Res ipsa loquitur is not a cause of action or a theory of recovery distinct from the law of negligence. Instead, it is a principle of tort law which permits a fact-finder to conclude that a defendant is negligent when the defendant has exclusive control over the instrumentality that caused injury and the accident was one which ordinarily does not occur in the absence of misfeasance by the one having such exclusive control. The principle, where applicable, is an aid to a plaintiff in a negligence case in satisfying his burden of production of evidence. *See, Black's Law Dictionary* (1951) p. 1470; *Virginia Model Jury Instructions, Civil,* vol. I, Instruction 7.050; Friend, *supra,* § 3.7D. On the question whether res ipsa loquitur is applicable in any event to negligence suits against municipal corporations, *see, City of Norfolk v. Travis,* 149 Va. 523 (1927); 13B M.J., *Municipal Corporations,* § 105; and 57 Am. Jur. 2d, *Municipal Tort Liability,* § 378. Because the City did not raise any of these matters in its demurrer or plea, they will not be considered further. The point of this parenthetical observation is merely to clarify that the court is of the opinion that the motion for judgment is premised upon the theory of negligence, and no other.

Those portions of the plaintiffs' claim which relate to the City's alleged failure "to provide reasonable sewer service," and the City's alleged failure to use "ordinary care in designing and constructing" the system, are demurrable. The establishment of drains and sewers, and sewerage systems, is a governmental function. Planning, design, and adoption of a construction pattern are also governmental functions. These matters involve judgment and discretion. Thus, even those jurisdictions that are most liberal in allowing claims against municipalities nevertheless immunize municipalities against suits

based on allegedly defective, inadequate, or improper sewer designs and plans. 57 Am. Jur. 2d, *Municipal Tort Liability*, § 347 *et seq.*

In *Stansbury v. City of Richmond*, 116 Va. 205 (1914), the plaintiffs claimed that they received inadequate water for sanitary purposes in an annexed area. The Court held that the City cannot be liable in connection with the adoption and implementation of a plan for supplying the municipality, or a part of it, with water, drainage, or sewerage. The Court said that such functions were governmental and discretionary in nature and, therefore, the doctrine of sovereign immunity applies. *See also, Freeman v. City of Norfolk*, 221 Va. 57 (1980), and *Taylor, supra*, where designing traffic flows, streets, and safety devices were held to be governmental functions.

The plaintiffs attempt to draw a distinction between the original adoption of a sewer plan and later developments. They contend that *Stansbury* stands for the proposition that a city may be liable for the design of a system if, once installed, it is proven "by experience" to be inadequate or defective. The court rejects this argument. First, insofar as language in *Stansbury* may be construed to make such a distinction, it is dicta; the Court held there that the plaintiffs could not recover against the city because of alleged inadequacies in the system. Second, such a distinction is contrary to the great weight of authority and is inconsistent with more recent sovereign immunity cases in Virginia. Third, the distinction makes little practical sense because in almost any case of this sort, a plaintiff's claim will be based on what happens *after* the system has been installed, not while it is being designed and constructed.

Therefore, the court holds that the City is immune from liability in connection with the planning and design of its sewer system and in the adoption, construction, and implementation of that plan.

For different reasons, the court also holds that the City is immune from liability in the operation and maintenance of its sewer system.

In *Chalkley v. City of Richmond*, 88 Va. 402 (1891), the court held that the City of Richmond was answerable in damages to a store-owner where the City allowed an underground sewer to fall into disrepair and then altered the course of the culvert carrying the sewage, causing leakage of "filth" into the plaintiff's cellar. The subject of sovereign immunity was not specifically addressed.

*Chalkley* is referred to in a footnote in *Roanoke County Public Service Authority v. Chaney*, 221 Va. 694 (1981), but, again, the doc-

trine of sovereign immunity and its application to the operation and maintenance of sewer systems is not mentioned.

The leading authority on municipal corporations law observes that cities may be held liable for damage proximately resulting from negligent operation or maintenance of sewers. *See* 18 McQuillen, *Municipal Corporations*, sect. 53.118. But according to a leading legal encyclopedia, the jurisdictions are split on the issue. Some states hold that the operation and maintenance of sewers and the duty to keep them clean and free of obstructions are proprietary functions. Courts in other states have held that the operation of a sewer system, like the design and creation of it, is governmental in nature, and immunity extends to the maintenance of the system. *See* 57 Am. Jur. 2d, *Municipal Tort Liability*, §§ 376–378.

Recent decisions in this jurisdiction reflect an expansive view of governmental, as contrasted with proprietary, functions of a municipality when those functions are *directly connected to the health and safety* of the citizens. In *Taylor v. City of Newport News*, 214 Va. 9 (1973), the Court affirmed its decision in *Ashbury, supra*, that the municipal collection of garbage is a governmental function, even where that function coincides with a proprietary function (i.e., maintenance of streets and sidewalks). In *Edwards v. City of Portsmouth*, 237 Va. 167 (1989), the provision of ambulance services was held to be a governmental function. Citing *Ashbury*, the Court in *Edwards* pointed out that "if collecting garbage is a governmental function, then providing ambulance services must also be because it is difficult to imagine anything more directly tied to the health, safety, and welfare of the citizens." The Court also adhered to *Ashbury* in *Fenon, supra*, where clearing trash and debris from streets was held to be governmental in nature. There, the Court noted: "It is difficult to envision an activity of a city which would be more for the common good of all — more in the interest of public health and safety — than is here presented . . . ."

The correlation likewise is present here. If collecting garbage and removing trash and debris are governmental functions, then collecting and disposing of other forms of waste must also be. In cities — which almost by definition are densely populated — where drainfields and other individualized modes of sewage disposal are impractical if not impossible, it is difficult to imagine anything more tied to public health and safety for the benefit of all than the provision of a sanitary sewer system.

*Also see, Jackson v. City of Danville* (Danville Cir. Ct. # L–89–190)

Finally, the motion for judgment contains no allegations that would suggest that the City owns and operates its sewer system for special benefit or pecuniary profit, hallmarks of proprietary functions as contrasted with the broader category of governmental functions.

Therefore, the court is of the opinion that in Virginia the operation and maintenance of a sewer system is a governmental function.

Assuming that municipal sewer maintenance would be classified in Virginia as a proprietary function rather than governmental, the principles relating to streets and sidewalks would apply. In an action against a city for injuries resulting from negligence in the maintenance of streets and sidewalks, notice, actual or constructive, must be shown. *City of Virginia Beach v. Roman*, 201 Va. 879 (1960). Actual notice means that the city actually knew of the defect complained of; constructive notice means that the defect existed long enough so that the city should have discovered it by the exercise of ordinary care. *See, Virginia Model Jury Instructions, Civil*, vol. II, sect. 32.040. Here, the motion for judgment does not contain sufficient facts to state a cause of action for negligence in the maintenance of the City's sewer system even if that function were proprietary in nature.

For the reasons explained, the court is of the opinion that the City's operation of its sanitary sewer system falls within the protection afforded by the doctrine of sovereign immunity. Accordingly, the City's demurrer will be sustained and the action dismissed.

Because of the view taken with respect to the issue of sovereign immunity, it is not necessary to address the issue raised in the special plea filed by the City.