## CIRCUIT COURT OF ALBEMARLE COUNTY

Fred L. Mitchum, Jr.

v.

Albemarle County
Service Authority

July 12, 1994

Case No. 5204-L

BY JUDGE PAUL M. PEATROSS, JR.

This matter is before the Court on the motion of defendant Albemarle County Service Authority (ACSA) to set aside the jury verdict rendered at trial on May 23, 1994. The jury held the defendant liable for the injuries sustained by the plaintiff, Fred L. Mitchum, Jr., in an accident on January 6, 1992. The accident occurred when the plaintiff struck an open manhole while driving on Rio Road in Albemarle County. The manhole was then part of the sewer system maintained by the ACSA. The defendant claims an entitlement to sovereign immunity from tort liability as noted in paragraph 13 of its Grounds of Defense; and after reviewing the applicable law, the Court finds that the defendant is so entitled.

The seminal case pertinent to this issue, cited by both parties, is *Virginia Electric and Power Co. v. Hampton Redevelopment and Housing Authority*, 217 Va. 30 (1976). The *VEPCO* Court considered whether a municipal housing authority, created pursuant to the Housing Authorities Law (Va. Code Ann. § 36.1-55.6), was an "arm" of the Commonwealth and thereby immune from liability for negligence in the operation and maintenance of a housing project under its control. *Id.* at 31-32. The court found that the housing authority was not an "arm" of the Commonwealth, deeming significant the fact that the Housing Authorities Law alone did not create the housing authority but rather "local activation, optional with each locality" was required. *Id.* at 32. The *VEPCO* court also noted that the locality maintained substantial control over the housing authority by such means as appointing its commissioners and approving its projects. *Id.* at 32-33.

Following *VEPCO*, the *Prendergast* court found that a park authority, created pursuant to the Park Authorities Act (Va. Code Ann. §§ 15.1-1228 through 15.1-1238.1), was not an "arm" of the Commonwealth. *Prendergast v. Park Auth.*, 227 Va. 190, 194-95 (1984). The court reiterated that the correct approach for determining whether an entity is an "arm" of the Commonwealth is to examine the entity's attributes. *Id.* at 194.

Under this test, the ACSA is not an arm of the Commonwealth. The Board of Supervisors of Albemarle County, not the State itself, created the ACSA by exercising the option granted by the Virginia Water and Sewer Authorities Act (Va. Code Ann. §§ 15-764.1 et seq. (Michie 1950) current version at §§ 15.1-1239 et seq. (Michie 1989)). Moreover, the Board continues to maintain substantial control over the ACSA. *See* Extract from Minutes, Meeting of Board of County Supervisors of Albemarle County (Apr. 2, 1964). Therefore, the ACSA does not enjoy sovereign immunity as an "arm" of the Commonwealth.

The Court's inquiry does not end here, however. A further consideration is necessary regarding whether the entity in question qualifies for immunity as a municipal corporation performing governmental functions. *See VEPCO*, 217 Va. at 33-36; *Prendergast*, 227 Va. at 195 (remanded for consideration of whether the Park Authority was engaged in a governmental versus a proprietary function).

The Supreme Court has determined that whether an entity occupies the status of a municipal corporation depends not only on how many attributes of a municipal corporation it possesses but also, and more importantly, on why the status inquiry is being made. *Hampton Roads Sanitation Dist. Comm'n v. Smith*, 193 Va. 371, 377 (1952). If the pivotal point is one of procedure, it is more probable the entity will be deemed a municipal corporation than if there were a substantive legal issue involved. *Id.* Finding that this rule "is not inflexible," however, the *VEPCO* court held that the municipal housing authority in question occupied the status of a municipal corporation:

> Indeed, for purposes of uniformity in determining tort immunity, a municipal housing authority should be held to occupy the same status as the municipality which brings it into existence and oversees its activities. We so hold.

217 Va. at 34.

The defendant argues that this holding renders the ACSA immune to suits in tort. The Court, however, interprets this holding narrowly so as to

preserve its spirit. If the ACSA were to occupy the status of Albemarle
County, the ACSA would receive automatic immunity from tort liability.
*See, Mann v. County Bd. of Arlington County*, 199 Va. 169 (1957). How-
ever, another water and sewer authority, identical to the ACSA in purpose
and function, would not receive immunity if a city rather than a county
created it. Moreover, extending this holding would complicate rather than
resolve the issue of status if applied to an authority which was created by
a city and a county jointly. *See* Va. Code Ann. §§ 15.1-1240 through
15.1-1241. Thus, the Court finds that the goal of uniformity is best served
if, for the purposes of determining tort liability, the ACSA occupies the
status of a municipal corporation if and only if it possesses the attributes
thereof.

The Supreme Court has identified six attributes which characterize a
municipal corporation, *City of Richmond v. Richmond Metropolitan Auth.*,
210 Va. 645, 647 (1970), and the ACSA possesses all six. The ACSA is a
public body politic and corporate (Code § 15.1-1241); it serves a public
purpose (Code § 15.1-1250); it has the power to have a common seal, to
sue and be sued, and to enter into contracts (Code § 15.1-1250); it has the
power of eminent domain (Code § 15.1-1250); it has the power to borrow
money and issue bonds which are tax exempt (Code §§ 15.1-1250 through
15.1-1258); and its management is vested in a board of directors (Code §
15.1-1249). *See id.* Accordingly, the Court finds that the ACSA is a mu-
nicipal corporation for purposes of determining its tort liability. Thus, the
final inquiry is whether the ACSA exercised a governmental or proprietary
function in maintaining its sewer system and, specifically, in maintaining
its manholes.

In Virginia, a municipality acts in a dual capacity, one which is govern-
mental and one which is proprietary. *Fenon v. City of Norfolk*, 203 Va.
551, 555 (1962). When performing its governmental functions, the munic-
ipality is immune from liability in negligence; when performing its pro-
prietary functions, on the other hand, the municipality is not immune. *Id.*

The defendant points the Court's attention to the language of § 15.1-
1250, under which the powers of water and sewer authorities are defined,
as indicative that the General Assembly intended to grant entities like the
ACSA immunity from tort liability:

> Each authority created hereunder shall be deemed to be an in-
> strumentality exercising public and essential governmental func-
> tions to provide for the public health and welfare . . . .

Va. Code Ann. § 15.1-1250. The *VEPCO* court, however, interpreted similar language to indicate only that the General Assembly intended to declare that the activities of such authorities are proper functions of government, "thereby emphasizing the public purposes of such authorities and reinforcing the justification for the expenditure of public funds for those purposes." 217 Va. at 35. The Court agrees; yet while semantics alone may not qualify the ACSA's functions as "governmental," the nature of the ACSA's services do qualify them as such.

In *Ashbury v. Norfolk*, 152 Va. 278 (1929), the Supreme Court determined that a municipal corporation which operates for the preservation of the public health exercises purely governmental functions in discharging its duties and is therefore entitled to immunity from liability. 152 Va. 278, 286 (1929). The issue before the *Ashbury* court was the removal of garbage from city streets, and the court deemed that action to be governmental in nature. *Id.* The court identified the underlying test as whether the actions are for the "common good of all" or for the special benefit of a few. *Id.*

In *Wilshin v. City of Fredericksburg*, 26 Va. Cir. 329 (1992), the court cited this test in finding that "in Virginia the operation and maintenance of a sewer system is a governmental function":

> If collecting garbage and removing trash and debris are governmental functions, then collecting and disposing of other forms of waste must also be. In cities . . . where drainfields and other individualized modes of sewage disposal are impractical if not impossible, it is difficult to imagine anything more tied to public health and safety for the benefit of all than the provision of a sanitary sewer system.

*Wilshin*, 26 Va. Cir. at 333-34. Moreover, the court recognized that recent Virginia decisions "reflect an expansive view of governmental, as contrasted with proprietary, functions of a municipality when those functions are *directly connected to the health and safety of its citizens.*" *Id.* at 333 (emphasis in original).

In the case before the court, the ACSA's maintenance of its manhole happened to coincide with the State Highway Department's maintenance of its streets. However, the location of the manhole being serviced by the ACSA is irrelevant to a determination of the applicable law. Thus, those cases which recognize the maintenance of streets as a proprietary function

need not be considered. *See, Hogard v. Richmond*, 172 Va. 145, 154 (1939).

Because the Court finds that the ACSA acted as a municipal corporation performing governmental functions in servicing a manhole which was part of its sewer system, the Court holds that the ACSA is entitled to immunity from liability in tort. The jury verdict holding the defendant liable for the plaintiff's injuries is accordingly set aside. Consequently, the Court does not address the defendant's motion to strike.