Churchill Apartments Associates

v.

City of Richmond et al.

April 5, 1995

Case No. LW-2170

BY JUDGE MELVIN R. HUGHES, JR.

In this case plaintiff, owner of a multi-unit apartment complex, has filed a four count Amended Bill of Complaint against the City of Richmond seeking money damages and equitable relief. The case grows out of the City's operation of a public landfill on property adjacent to that of plaintiff's. Plaintiff alleges that the City has caused waste to be placed on its land and that the City has allowed methane gas, generated from decomposing material at the landfill, to migrate onto plaintiff's adjoining land.

The Amended Bill of Complaint states claims in negligence, nuisance and improper taking for money damages and states a claim in trespass for money damages and injunctive relief. The money damages are said to be diminution in property value and lost profits. The City seeks summary judgment on the ground that all claims are barred by the statue of limitations and sovereign immunity. The City argues that plaintiff's taking claim is barred because the property is not denied all economically viable uses. Finally, the City urges that plaintiff is not entitled to any damages for lost profits because those are remote, speculative or contingent. The City relies on the allegations in plaintiff's Amended Bill of Complaint, answers to Requests for Admissions and answers to Interrogatories to support its motion for summary judgment relief.

The allegations in the Amended Bill of Complaint and the answers to discovery can be summarized as follows. The City began landfill operations at this site in 1961. Since that time waste products have been depos-

ited on plaintiff's property. Plaintiff alleges that in the early 1980's the City capped the landfill with a layer of clay "to prevent leakage from contaminating surface and/or ground water." In 1982 out of a concern for methane gas levels the City instituted a methane gas detection program. The program involved making probes on plaintiff's land and on the landfill. These confirmed that methane gas was being produced by the landfill but that the City did not know if the gas was then on plaintiff's property.

In June of 1985, a consultant, Draper-Arden Association, Inc., hired by the City, made a study. In a written report Draper-Arden found that the landfill was producing potentially hazardous concentrations of methane gas and that the gas was migrating onto plaintiff's land. Draper-Arden recommended that the City install a methane gas control system to remedy the migration. After obtaining easements from adjacent property owners including plaintiff in February, 1988, the City constructed the system. The system was later installed but did not become operational until April of 1990. From then on into 1991, the system experienced several occasions of operational difficulties. There were several detections of methane gas on plaintiff's property from the time the system was first operational in April, 1990 into 1991.

In the meantime, in October 1989, plaintiff applied to the Richmond Redevelopment and Housing Authority (RRHA) to rehabilitate part of the apartment buildings on the complex. The application received tentative approval but at the urging of the City Manager, the rehabilitation was delayed until the environmental issues posed by the landfill could be addressed. Later in September, 1991, the Department of Housing and Urban Development (HUD) found that plaintiff's application for rehabilitation assistance could not be approved because the presence of methane on plaintiff's property violated environmental regulations. After several attempts by the City to revise the gas extraction system, in December, 1992 HUD informed plaintiff that it still could not approve the application. On April 28, 1993, HUD reaffirmed its position at a meeting in Washington with representatives of the City, RRHA and plaintiff. By letter dated January 28, 1992, to the City Attorney, plaintiff notified the City of its potential claims relating to the landfill. On August 4, 1993, plaintiff filed a Motion For Judgment in this case. After the case was transferred to the equity side of the court, plaintiff filed its Amended Bill of Complaint on April 12, 1994.

## Statute of Limitations

Both sides agree that the governing statute of limitations is § 8.01-243(B) for damage to property. It states in pertinent part:

> Every action for injury to property shall be brought within five years after the cause of action accrues.

Virginia Code § 8.01-230 provides for the accrual time of a cause of action. It provides in pertinent part:

> In every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run . . . *when the breach of . . . duty occurs in the case of damage to property and not when the resulting damage is discovered.* [Emphasis added.]

While the parties may agree on the governing statue of limitations they disagree sharply on when any such cause of action may have accrued here. As to negligence, the City contends that methane on the plaintiff's land was detected in the early to mid 1980's in the Draper-Arden study. Plaintiff admits that once methane begins to generate, it does so continually. This constituted an injury, no matter how slight, that effectively created plaintiff's cause of action then, no matter that other more substantial damages occurred later. Plaintiff argues that it did not have a cause of action in the 1980's because it suffered no injury until September, 1991 when HUD turned down its application for rehabilitation. Plaintiff argues that the City's attempt to tie the accrual of its cause of action to the installation of the clay cap in the 1980's is misplaced because the four elements of (1) duty, (2) breach of duty, (3) causation, and (4) damages necessary for a tort claim in negligence did not all come together until September, 1991, the time of the HUD turn down. The Court agrees with the City's position.

Plaintiff asserts that it claims no injury for any methane that was present on its lands in the 1980's, during and after the time of construction of the clay cap. However, plaintiff otherwise alleges that the construction of the cap caused the methane to migrate horizontally rather than rise vertically into the atmosphere where it would be essentially harmless. What plaintiff does not recognize is that even from its own construction of the City's duty, that the City has failed to adequately design and maintain the methane extraction system, that this resulted in a migration of methane onto its lands. By this account the City involved itself in a breach of duty then. This breach under § 8.01-230 marks the accrual of its cause of action, in

the mid 1980's, making the statue of limitation "begin to run" then under the terms of the statute. The fact that plaintiff claims no injury from this point in time and not until September, 1991, is of no moment because the limitation period begins to run from the time of accrual, the breach of duty, not from the time damages are later ascertained. *Richmond Redevelopment and Housing Authority v. Laburnum Construction Corp.*, 195 Va. 827 (1954). Plaintiff's reliance on the *Locke v. Johns-Manville Corp.*, 221 Va. 951 (1981), analysis regarding the accrual of a cause of action for recovery due to exposure of asbestos is misplaced because that analysis dealt with negligence for personal injury not property damage as here. The property damage statue of limitations in § 8.01-243 is governed by accrual standards in § 8.01-230 which speaks of accrual "when the breach of duty occurs . . . in the case of damage to property."

Plaintiff has otherwise stated in answers to interrogatories and has argued that the deposit of waste and the migration of methane constitutes a continuing trespass. See Plaintiff's Answer to Defendant's First Set of Interrogatories, Interrogatory No. 4. This makes *Hampton Roads Sanitation Dist. v. McDonnel*, 234 Va. 235 (1987), a case plaintiff relies on, inapplicable. In *Hampton Roads*, the Supreme Court found that the discharge of sewage onto plaintiff's land for which he sought a money judgment for damage to his land was at intervals, each of which gave rise to separate actionable events. Accordingly, though *Hampton Roads* is authority for the proposition that injury begins the cause of injury, as plaintiff argues, the injury here occurred when the methane and waste first went on plaintiff's land constituting the City's claimed breach of duty, a time beyond five years of the filing of the original Motion For Judgment in this case.

The bar also includes plaintiff's "taking" claim, which would have been otherwise assertable under Art. I, § 11, of the Virginia Constitution but for the applicable limitation in § 8.01-243.

Accordingly, for all causes of action in the counts seeking money damages, all are barred by § 8.01-243, as the City contends.

### Sovereign Immunity

The Court also agrees with the City's position on sovereign immunity as it relates to the claims of negligence and nuisance against it in its operations of the public landfill. The Virginia Supreme Court has held that garbage collection is a governmental activity. *Taylor v. City of Newport News*, 214 Va. 9, 10 (1993); See *Ashbury v. City of Norfolk*, 152 Va. 278

(1929). The Court believes that this extends to the disposal of garbage as well, as the City contends.

### Conclusion

Given the outcome of the statute of limitations issue for all the claims, the only remaining issue and the one not addressed by the parties in this motion is whether plaintiff can obtain injunctive relief for a continuing trespass wherein, according to the Amended Bill of Complaint, "the issuance of a mandatory injunction requiring the City to remove the waste to abate the continuing trespass," is sought. The case can proceed on that issue.

Counsel for the City can prepare and submit an order granting summary judgment on the grounds and for the reasons stated herein noting plaintiff's exceptions.