## CIRCUIT COURT OF WARREN COUNTY

Charlotte Smith

v.

Town of Front Royal

January 8, 2003

Case No. (Law) 02-199

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Town's plea in bar based on sovereign immunity to a personal injury action filed by the plaintiff who had fallen while stepping over a pile of snow on a Town sidewalk. Upon consideration of the memoranda of the parties, the Court has made the following decision to deny the Town's Plea in Bar.

### I. *Statement of Material Facts*

The following material facts are not disputed.

In this case, the Plaintiff alleges that she tripped and fell on January 5, 1998, on a sidewalk owned by the Town while trying to step over a pile of snow allegedly created by the Town of Front Royal's snow plowing of its streets. The last snow before the Plaintiff's accident was a ten inch snowfall on December 29-30, 1997, and by January 1, 1998, the Town had completed its snow removal operations resulting from the ten inch snowfall. By the time of the Plaintiff's accident, the sidewalks on which the Plaintiff was walking

were clear of snow except in the area where the Plaintiff allegedly fell, where there was a large pile of snow which obstructed the sidewalk.

The defendant Town has filed a Plea in Bar contending that it should be dismissed as a defendant on the grounds of governmental immunity because the Town's snow clearing operations are a protected governmental function.

## II. *Conclusions of Law*

"Under Virginia's approach to sovereign immunity, the doctrine is viewed as having developed from being simply a 'privilege of sovereignty' into a mainstay of public policy." *Burnham v. West*, 681 F. Supp. 1169, 1171 (E.D. Va. 1988). Like all areas involving public policy, a court should wade into its waters reluctantly and only as deeply as absolutely necessary because, at some depth, the point of permissible judicial interpretation is passed and the murky depths of impermissible judicial legislation of public policy are entered.

Where currents collide, whether at sea or in the law, the main channel is frequently difficult to discern. Few areas of the law illustrate this potential turbidity than the confluence of the currents of proprietary and governmental functions in negligence actions against municipal corporations. Maintenance of municipal sidewalks is a proprietary function, and "[i]n Virginia, a . . . [municipal corporation] has the positive and non-delegable duty to keep and maintain its streets and sidewalks in repair and in safe condition for public travel . . . [and] is liable for a negligent failure to discharge the duty." *Votis v. Ward's Coffee Shop*, 217 Va. 652, 654, 231 S.E.2d 236 (1977) (defect in public sidewalk); *accord Freeman v. City of Norfolk News*, 221 Va. 57, 266 S.E.2d 885 (1980). However, when the snow begins to fall, it not only obscures the sidewalk, it obscures the clear current of the law because, during the emergency created by the snowfall, municipal snow removal operations are governmental acts done for the common good in responding to the emergency conditions on the road or sidewalk and are therefore protected by sovereign immunity. *Bialk v. City of Norfolk*, 242 Va. 56, 495 S.E.2d 619 (1991); and *Stanfield v. Peregoy*, 245 Va. 339, 429 S.E.2d 11 (1993).

What happens after the emergency is over and the exigencies created by the inclement weather no longer exist? The Plaintiff argues that, after the emergency is over, then the proprietary duty to maintain the sidewalks regains its primacy. On the other hand, the Town argues that the cloak of sovereign immunity applies absolutely and unconditionally to its governmental function of clearing of its streets and sidewalks of snow. The legal issue may be metaphorically stated. As the snow begins to melt, does the cloak of sovereign

immunity also began to melt away from the Town's actions taken with respect to snow accumulations on its sidewalks?

This is an issue on which there are divergent currents of jurisprudence, and, in the absence of controlling appellate authority, the circuit courts which have considered this issue have reached different results because they have each selected a different current in which to swim. In this case, the Town relies on *Bialk* and *Stanfield, supra,* and *Lester v. City of Roanoke,* 20 Va. Cir. 319 (Roanoke City 1990). In *Lester* the trial court focused solely on the municipal function of the clearing of ice from a public street and ruled that snow and ice removal from a public street is a governmental function absolutely protected by sovereign immunity. In *Lester* there was no snowstorm, but rather water flowed through a hole in the road and froze on the road surface. Although it was alleged that the condition had existed for a considerable period of time, the Roanoke Circuit Court focused on the act of removal of ice from a public street and sustained the city's demurrer on the ground that the decision as to when and how to remove snow and ice from a public street was a governmental function clothed with sovereign immunity despite the fact that there was no general emergency in the community caused by the weather at the time of the accident.

In *Chiles v. Gray,* 37 Va. Cir. 459 (Richmond City 1996), the trial court considered the circumstances of the case and ruled that, at some point after the snow emergency was over, the city's proprietary duty to maintain its streets regained the ascendancy and the negligent failure to remove snow and ice which had accumulated after the storm could give rise to liability. In *Chiles,* the plaintiff sued the Richmond Metropolitan Authority as a result of an accident allegedly caused by snow which had accumulated on a bridge after a snowstorm and after the emergency created by the storm was over. In that case, the Richmond Circuit Court rejected the defendant's argument that its snow and ice removal function was absolutely clothed with sovereign immunity, and the trial court made the following astute observations:

> Finally, in making this ruling, the court is aware of the argument that sovereign immunity attaches at the time of the decision to remove — or not to remove — snow and ice, so that RMA is immune no matter how much time elapsed between its alleged negligence in not removing the snow and ice and plaintiff's accident. The court rejects that argument. Indeed, if that argument were correct, the City of Norfolk could have left all 800 trees felled by Hurricane Donna in its streets forever and then claimed immunity from any negligence liability by saying

8

that it decided during the hurricane — obviously an emergency — not to remove the trees. Likewise, the City of Hampton could have decided during its snowstorm — another emergency — never to repair potholes or remove debris caused by the storm, and then use that "emergency decision" to defeat personal injury claims made weeks, months, or even years later. The court does not believe that to be the law. Instead, the court believes that the timing of the hurricane and plaintiff's accident in *Fenon*, and the timing of the snowstorm and plaintiff's accident in *Bialk*, were important considerations in the Supreme Court's decisions in those cases.

In its snow and ice decisions, the Supreme Court has never expressly indicated what analysis is to be applied to the issue of snow and ice accumulation after a storm. In *Bialk v. City of Norfolk*, 242 Va. 56, 59, 495 S.E.2d 619 (1991), the plaintiff was struck by snow from a snow plow clearing the streets after a heavy snowfall, and the Supreme Court ruled that:

Because the snow-removal operations in this case were acts done for the common good in coping with an emergency, they constituted the exercise of a governmental function. Although the function coincided with the City's proprietary function of keeping its streets in a safe condition for travel, where those functions coincide, "the governmental function is the overriding factor."

In the later case of *Stanfield v. Peregoy*, 245 Va. 339, 429 S.E.2d 11 (1993), the plaintiffs, like the plaintiff in *Bialk*, were injured during snow clearing operations. As in *Bialk*, the Supreme Court noted the time of the snowfall and the municipal response. *Stanfield* at 342 and *Bialk* at 57-58. Obviously, like all inquiries involving potential negligence, the surrounding circumstances have a material impact on the potential liability, and, in *Stanfield* and *Bialk*, the dispositive factor appears to have been the fact that the snow removal actions were undertaken to abate the emergency created by the inclement weather.

*Woods v. Town of Marion*, 224 Va. 44, 46, 425 S.E.2d 487 (1993), further illustrates that point, that the circumstances creating the ice or hazard determine the extent to which the municipality may be liable for failing to correct the hazard. In *Woods*, the plaintiff was injured in an accident on an icy street. The trial court, following the reasoning of *Lester v. Roanoke, supra*, focused exclusively on the act of removing ice from a public road and

sustained the town's pleas of sovereign immunity, but the Supreme Court reversed the trial court stating:

> Even though the Town's allegedly negligent waterworks operation and street maintenance might have subjected it to liability, the Town contends that it is not liable in this case because the alleged acts of negligence also involved a violation of the Town's governmental function of "keeping its streets clear of obstructions." The Town relies primarily upon four Virginia cases as support for its contention. We think that this reliance is misplaced.

> In two of the cases upon which the Town relies, in which pleas of governmental immunity were sustained, the street obstructions causing the injuries resulted from unusual weather conditions creating emergency situations that required immediate governmental action to restore vital services to the public. *Bialk*, 242 Va. at 59, 405 S.E.2d at 621 (round-the-clock snow removal following a snowfall of 15.4 inches); *Fenon v. City of Norfolk*, 203 Va. 551, 556, 125 S.E.2d 808, 812 (1962) (emergency removal of some 800 downed trees following a hurricane). No such emergency is alleged in the amended motion for judgment before us.

> In *Bialk*, we held that the act of clearing the streets following a large snowstorm was both a governmental act in responding to the emergency weather conditions in opening streets to vital public services and a proprietary act in maintaining the surface of the streets. We said that where those two functions coincide, "the governmental function is the overriding factor." *Bialk*, 242 Va. at 58, 405 S.E.2d at 620-21 (quoting *Taylor v. City of Newport News*, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973)).

> In *Taylor*, the third case upon which the Town relies, we sustained a plea of governmental immunity arising out of the negligence of a city employee in spilling grease on the street while collecting garbage, a governmental function. In that case, the city had also been negligent in the performance of its proprietary function of maintaining the streets in a safe condition by allowing grease to remain on the street for over 14 hours before the plaintiff slipped and fell on the grease. *Taylor*, 214 Va. at 10-11, 197 S.E.2d at 210.

10

We also cited *Taylor* in the fourth case upon which the Town relies. In that case, it was claimed that a municipality was liable for its negligence in failing to repair a malfunctioning traffic signal. *Transportation, Inc. v. City of Falls Church*, 219 Va. 1004, 1006, 254 S.E.2d 62, 64 (1979). In *Transportation*, although we recognized that "the repair of a malfunctioning traffic signal bears some relationship to street maintenance and displays, therefore, a characteristic of a proprietary function," we held that its dominant purpose was to regulate traffic, a governmental function. *Id.* at 1006, 254 S.E.2d at 64.

However, under the facts alleged in this case, the removal of ice from one of the Town's streets displays none of the characteristics of a governmental function. Here, the Town is charged with negligence in operating its waterworks and in failing to maintain its streets, both of which are proprietary functions. Because none of its allegedly negligent acts was a governmental act, the trial court erred in sustaining the Town's plea of governmental immunity.

In *Woods*, the initial offending act which caused the hazard was a leaking water pipe not a snowstorm, which caused the road to freeze. The lesson is that while the duty to remove hazardous ice from a road or sidewalk is clearly a municipal duty, whether that duty is a governmental function or a proprietary function depends upon the circumstances at the time of the accident. Consequently, the holding of *Lester v. Roanoke, supra,* and the Town's assertion that the removal of snow and ice from public streets and sidewalks is absolutely protected by sovereign immunity without regard to the fact that the emergency was over is an overstatement of the law, and the *Lester* holding of absolute protection for municipal snow and ice removal is a legal eddy outside of the mainstream of the law on this issue. While acting to abate the consequences of an emergency caused by the weather, be it caused by a hurricane, by a flood, or by a snowstorm, the decisions and acts of the municipal corporation in dealing with the emergency are protected by the cloak of sovereign immunity, but, when the emergency is over, and normal conditions return, then the duties of the municipal government to maintain the streets and sidewalks revert to their former proprietary status.

The general rule is that, where the municipality created the hazard on the sidewalk by its snow removal action, it may held liable if it does not take action to correct problems which it created within a reasonable time after the

storm is over. In 40 Am. Jur. 2d, *Highways, Streets, and Bridges*, the editors state:

> Under the natural accumulation doctrine, a municipality has no obligation to remove natural accumulations of ice and snow from any location, unless the municipality increased the hazard of travel by the public by taking affirmative action to alter the natural accumulation or unless the municipality caused an unnatural or artificial accumulation of ice on the sidewalk by taking affirmative steps to alter the condition of the sidewalk.

*Id.* at § 535.

> Prerequisites to liability for injuries caused by accumulation of snow or ice are notice, either actual or constructive, of the dangerous condition of a sidewalk or crosswalk and a reasonable opportunity to remedy the condition.
>
> Generally, the long continuance of an observably dangerous condition of the sidewalks will charge the municipality with constructive notice thereof, whereas, if only a short time has elapsed between the creation of the dangerous condition and the accident, the municipality will not be deemed to have had such notice. There is no formula for determining liability on the basis of any ratio between the number of inches of snowfall and the time elapsed before the happening of the accident.

*Id.* at § 539. In 19 McQuillen, *Municipal Corporations*, § 54.84.20 (3d ed.), the editors state:

> The general rule is that a municipality is not liable for injuries resulting from the general slipperiness of its sidewalks occasioned by a recent precipitation of rain or snow. Removal of ice and snow is required only where obstruction to travel has resulted. It cannot be required to remove the whole of a heavy snowfall or to clear the whole of the sidewalk. Even though ice has made a particular sidewalk dangerous, the city may not be liable where proof is lacking that such condition was unusual or different from conditions prevailing generally in that locality,

especially where the city had done all that it reasonably could have done to keep the sidewalk safe for travel.

The application of the law of negligence to the facts of this case will determine whether the Town is liable to the plaintiff.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Plea in Bar of the Town of Front Royal is denied.