MARGARET H. EDWARDS, ADMINISTRATRIX, ETC.

V.

CITY OF PORTSMOUTH, ET AL.

Record No. 860736

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*William D. Breit (Breit, Rutter & Montagna*, on brief), for appellant.

*George M. Willson, Assistant City Attorney; Carolyn P. Oast (Steven Lieberman, City Attorney; John A. Heilig; Heilig, McKenry, Fraim & Lollar*, on briefs), for appellees.

THOMAS, J., delivered the opinion of the Court.

On February 27, 1986, Margaret H. Edwards, administratrix of the estate of Victor S. Edwards, Jr., deceased (Edwards), filed a two-count motion for judgment against the City of Portsmouth (the City), Portsmouth Ambulance Service, Inc., Portsmouth General Hospital, Inc. (the Hospital), and City of Portsmouth Emergency Medical Service Agency. In the first count, Edwards alleged that on February 29, 1984, her husband suffered a heart attack at their home in Portsmouth. She alleged further that she "dialed emergency 911 to have an ambulance come to provide emergency medical service to her husband." Edwards also alleged that despite their "duties to provide reasonable emergency ambulance services and medical care to the deceased, the defendants

. . . negligently failed to provide emergency medical care for the deceased which directly and proximately resulted in his death on February 29, 1984."

The motion for judgment also stated that as "a result of the negligence as aforesaid plaintiffs filed a notice with each defendant on February 24, 1986 in accordance with Section 8.01-581.2 of the Code of Virginia, as amended, notifying each defendant of the claim herein and therefore suit is proper at this time." The date of the notices was only three days prior to the filing of the motion for judgment.

In paragraph 10 of the motion for judgment, Edwards alleged that each defendant,

owed a duty to the general public and the plaintiff . . . to assure that ambulance services provided to the public and the plaintiff . . . were in accordance with the standard of care provided in the community and the Commonwealth of Virginia and to provide such service in a safe and reasonable manner so as to avoid injury to those persons who are provided with the service.

In paragraph 12 of the motion for judgment, the same allegation is repeated but this time the Hospital is specifically listed as the entity owing the duty.

In the second count of the motion for judgment, Edwards alleged that at all pertinent times the City of Portsmouth knew, or should have known, that the Hospital and the Ambulance Service were providing "service to the public in a negligent and careless manner, not in accordance with the standard of care provided in the community and in the Commonwealth of Virginia." Edwards alleged that the City was negligent in failing to terminate the contract with the other defendants for the provision of ambulance services.

Edwards nonsuited Portsmouth Ambulance Services, Inc. Further, in her brief, Edwards concedes that Portsmouth Emergency Medical Services Agency is not a "legal entity" and cannot, therefore, be a party defendant.

The focus of this appeal is upon the question whether Edwards can maintain her suit against the City and against the Hospital. At trial, both the City and the Hospital moved to dismiss. The City filed a special plea of sovereign immunity in which it con-

tended that in providing ambulance services, it was engaged in a governmental function and was, therefore, immune from suit. The Hospital filed a special plea of lack of jurisdiction on the ground that the suit was filed in violation of the Medical Malpractice Act, Code § 8.01-581.1 *et seq.* (the Act), in that it was filed within ninety days of the filing of the notice of claim of malpractice. The trial court granted both motions to dismiss.

## I

We consider first whether Edwards' suit against the City is barred by the doctrine of sovereign immunity. Edwards argues that in providing ambulance services, the City was engaged in a proprietary, as opposed to a governmental, function. Therefore, Edwards argues, the City is not immune. The City contends that providing emergency ambulance services is a governmental function which falls squarely within its police powers.

Edwards makes the following arguments to support her proposition that the ambulance services here complained of are a proprietary function of the City: (1) that ambulance services have not historically been provided by governments, (2) that such services are not needed to insure the health and safety of the City, (3) that because a fee is charged, the services are not governmental, (4) that the general public does not have the benefit of these particular ambulance services because the services are only available to those citizens who elect to use them and who then pay a fee for their use, (5) that these services are not provided exclusively by the City, and (6) that these services are not provided by an entity which is part of the government. We disagree with Edwards.

The ambulance services are provided by the City pursuant to Code § 32.1-156. That code section sets forth the powers of governing bodies of counties, cities, and towns with respect to emergency medical services. Subsection A reads as follows:

Upon finding as fact, after notice and public hearing, that exercise of the powers enumerated below is necessary to assure the provision of adequate and continuing emergency services and that exercise of the powers enumerated below is necessary to preserve, protect and promote the public health, safety and general welfare, the governing body of any county or city is hereby empowered to, . . . .

Then the statute enumerates the ways in which a local government may regulate ambulance services. Next follows subsection **B** which provides that:

> In addition to the powers set forth above, the governing body of any county or city is hereby authorized to provide, or cause to be provided, services of emergency medical service vehicles, to own, operate and maintain emergency medical service vehicles, to make reasonable charges for use of emergency medical service vehicles, and to contract with any agency for the services of its emergency medical service vehicles.

Taking these two provisions together, it is apparent that only by first finding that there is a necessity to "assure the provision of adequate and continuing emergency services" and finding that providing emergency medical services "is necessary to preserve, protect and promote the public health, safety, and general welfare" can local government proceed under subsection B "to provide, or cause to be provided, services of emergency medical vehicles."

Thus, on the facts before us, and as a matter of statute, the City could not have established the emergency ambulance services here in dispute were it not exercising its police powers. Where a local government exercises powers delegated or imposed, it performs a governmental function. *See Hoggard* v. *Richmond*, 172 Va. 145, 147, 200 S.E. 610, 611 (1939); *Franklin* v. *Richlands*, 161 Va. 156, 170 S.E. 718 (1933).

In *City of Richmond* v. *Long*, 58 Va. (17 Gratt.) 375 (1867), we held that hospital services provided by a city were an exercise of a governmental function. In *Ashbury* v. *Norfolk*, 152 Va. 278, 147 S.E. 223 (1929), we held that garbage collection was a governmental function because it concerned the preservation of the public health. In light of these cases, we conclude that ambulance services are akin to the provision of hospital services. Furthermore, if collecting garbage is a governmental function, then providing ambulance services must also be, because it is difficult to imagine anything more directly tied to the health, safety, and welfare of the citizens. We are unpersuaded by the argument that ambulance services are not governmental simply because similar services may be provided by private entities. In our opinion, the

test cannot be whether the same thing is done by private entities, but rather whether, in providing such services, the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens. Nor are we persuaded that charging fees renders the ambulance services proprietary. This is so because, as we noted above, in providing the ambulance services, the City was exercising its police power. Thus, even if fees were charged, the governmental aspect of the undertaking is controlling. *See Trans. Inc.* v. *Falls Church*, 219 Va. 1004, 1006, 254 S.E.2d 62, 64 (1979); *Taylor* v. *Newport News*, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973).

We hold, with regard to the first issue, that the trial court did not err in dismissing the City from the action on the basis of sovereign immunity.[1]

## II

We turn now to the claim against the Hospital. If the Hospital is a health care provider and if the Medical Malpractice Act (the Act) applies, then the suit against the Hospital, which was filed three days after filing the notice of claim instead of the ninety days set forth in the statute, was untimely.

In discussing this issue, Edwards focuses on whether ambulance services are listed in the Act, and upon whether ambulance services are contemplated by the Act. That focus misses the point. Edwards sued the Hospital. Hospitals are listed in the Act. Code § 8.01-581.1 states that " '*Health care provider*' " means a person, corporation, facility, or institution licensed by this Commonwealth to provide health care or professional services as a . . . hospital."

We hold that the Act applied to the Hospital and that by filing suit three days after filing the notice of claim, Edwards violated Code § 8.01-581.2, which provides in pertinent part that "[n]o actions based on alleged malpractice shall be brought within ninety days of the notification by the claimant to the health care

---

[1] Edwards cites no case in which ambulance services provided by local governments were held to be the exercise of a proprietary function. On the other hand, the City cites cases from Texas and Tennessee in which ambulance services were held to be the exercise of a governmental function. *See Brantley* v. *City of Dallas*, 545 S.W.2d 284 (Tex. Civ. App. 1976); *City of Memphis* v. *Bettis*, 512 S.W.2d 270 (Tenn. 1974).

provider and if a panel is requested within the period of review by the medical review panel."[2]

## III

For all the foregoing reasons, the judgment of the trial court will be

*Affirmed.*

\

---

[2] A request for a panel was made in this case by the Hospital. However, a decision on whether to convene a panel was stayed pending the outcome of this appeal on the question whether the claims against the Hospital were covered by the Act.