Katherine M. Wesley,
Adm'r of the Estate of
Fannie D. Cooksey,
deceased

v.

Mercy Ambulance Corp.
of Greater Richmond
d/b/a/ Richmond Ambulance Authority

November 17, 1995

Case No. LA-501-1

BY JUDGE MELVIN R. HUGHES, JR.

In this wrongful death action plaintiff alleges that her decedent died as a result of the defendant ambulance company's negligent examination and treatment and its failure to transport to an appropriate medical facility for proper medical care. Before the court for decision is defendant's plea of sovereign immunity. For the following reasons the court sustains the plea.

### Facts

For purposes of the ruling on the plea, the court will rely on the facts alleged in the Motion for Judgment as well as eight exhibits attached to defendant's memorandum of law in support of the plea. The parties do not dispute the facts and matters contained therein.

Fannie D. Cooksey, plaintiff's decedent, was bitten by a poisonous snake. Decedent's grandson, Michael Green, called the defendant Mercy Ambulance Company (Mercy) and requested that an ambulance be sent to transport the decedent to an appropriate health facility for medical treatment. Mercy timely arrived at the decedent's home and after a brief examination, advised decedent, her grandson, Michael Green, and her daughter, Katherine Wesley, that she had not been bitten by a snake, but rather suffered from a sting or bite from an insect. Plaintiff alleges that

Mercy was negligent in its examination and treatment of decedent, in its advice to decedent, and in its failure to transport decedent to an appropriate medical facility to be properly treated. The plaintiff further alleges that as a result of defendant's negligence, Ms. Cooksey experienced pain and suffering and eventually died on November 21, 1993.

The City of Richmond provides emergency ambulance services to its residents by employing the services of Mercy Ambulance Corp. Mercy is the ambulance service primarily responsible for responding to emergency calls within the City of Richmond. Mercy operates under a written contract with the Richmond Ambulance Authority (RAA), a political subdivision formed by the City of Richmond for the purpose of providing ambulance services to the residents of the City of Richmond. Under the contract, whenever RAA is called to respond, Mercy is required to go. This includes mutual aid to the residents of Henrico County, Chesterfield, and Colonial Heights as well.

A medical control board supervises the contract between Mercy, the RAA, and the City and has the authority to act on problems that are of a medical nature. The Board is comprised of physicians who are appointed by City Council. Under the contract the board:

> defines the pre-hospital practice in the community, including medical protocols, dispatch protocols, pre-arrival instructions, training requirements and quality improvement programs.
>
> It rules on all matters of local personnel certification, including discipline, suspension, and revocation. It is responsible for the supervision of prospective, interactive, and retrospective medical control activities of the system. The Medical Control Board approves the provider's training plan. The Medical Control Board appoints local physician(s) to serve as the Medical Director of the system and all the component providers.

Contract (Exhibit B).

Under the contract, Mercy is paid a set fee for providing ambulance services and does not bill patients for its services. Mercy receives a set fee under the contract without regard to the number of persons it may transport during any given year.

All billings and collections for Mercy's services are the responsibility of RAA. For those patients on Medicaid or with no insurance, the City subsidizes the RAA for services provided to those patients. If the funds col-

lected by the RAA do not cover its operating expenses, the difference is made up by City subsidies.

### Sovereign Immunity

The doctrine of sovereign immunity protects certain persons and entities from civil suits for simple negligence in the performance of their non-ministerial duties. It does not shield such persons from intentional or grossly negligent acts. *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980). The factors to be considered to determine whether an employee is entitled to immunity are "(1) the nature and function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion." *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984) citing *James v. Jane*, 221 Va. at 53, 267 S.E.2d at 113.

### 1. *Nature and Function Performed by the Employee*

If the function that a government employee was negligently performing was essential to a governmental objective this would weigh in favor of the employee's claim of sovereign immunity. Conversely, if that function has only a marginal influence upon a governmental objective this factor would weigh against granting sovereign immunity to a government employee. *Lohr v. Larsen*, 246 Va. 81 (1993). In *Edwards v. City of Portsmouth*, the Supreme Court of Virginia decided that ambulance services are a governmental function stating: "the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens" when it provides ambulance services. *Edwards v. City of Portsmouth*, 237 Va. 167, 375 S.E.2d 747, 750 (1989).

### 2. *Extent of the State's Interest and Involvement in the Function*

If the government has a great interest and involvement in the function, this factor would weigh in favor of the employee's claim of sovereign immunity. Conversely, if the government's interest and involvement in that function are slight, this factor weighs against granting sovereign immunity to a government employee. *Lohr v. Larsen*, 246 Va. 81 (1993).

The great extent of the state's interest and involvement in providing emergency rescue and medical care for its citizens is demonstrated by the Virginia Code sections authorizing counties to create rescue zones and to contract for such services. Va. Code Ann. §§ 27-23.1, 32.1-156 (Repl. Vol. 1992).

### 3. *Degree of Control and Direction Exercised by the State Over the Employee*

Here, the control and direction exercised by the state rose to the level necessary to entitle Mercy to the protection of the state's sovereign immunity.

Under law, counties are authorized to provide emergency medical services and to contract with any agency to do so and to create rescue zones and contract for the services of individual corporations. The counties are also authorized to prescribe rules and regulations for the operation of such rescue zones.

Mercy is subject to a high degree of control by RAA. RAA supplies the infrastructure for the emergency medical service system. The RAA owns the vehicles and equipment Mercy uses. RAA requires that Mercy, and its employees, have certain credentials. RAA controls the response times required for emergency calls. RAA requires Mercy to respond to all emergency calls received within the City limits. Mercy is also required to respond in all other situations where the RAA calls upon it to respond. Mercy is not at liberty to refuse to see any patient. Mercy's compensation is not tied in any way to the number of patients seen, the services performed, or any fee that the RAA charges the patient.

The Medical Control Board, appointed by the City Council, oversees Mercy in its performance of the contract. The Medical Control Board defines pre-hospital practice, sets medical and dispatch protocols, and dictates pre-arrival instructions, training requirements, and quality improvements programs.

Although Mercy is an independent contractor, the RAA and the Medical Control Board, exercise a very high degree of direction and control over Mercy. This high level of control weighs in favor of granting sovereign immunity to Mercy. *Lohr v. Larsen*, 246 Va. 81 (1993).

### 4. *Whether the Act Complained of Involved the Use of Judgment and Discretion*

The acts complained of (examination and treatment of patient, advice to patient, and decision whether or not to transport patient) all require a broad amount of discretion on the part of the defendant and its employees. The acts of examining and treating the patient, rendering advice to patient, and the final decision of whether or not to transport the patient to the hospital all require judgment calls to be made by Mercy and its employees. Matters of judgment based on experience, education, and training is

the very job Mercy has contracted to perform. If a broad discretion is vested in a government employee in performing the function complained of, this weighs heavily in favor of a claim of immunity. *Lohr v. Larsen*, 246 Va. 81 (1993).

## Conclusion

For the foregoing reasons, defendant's plea of sovereign immunity is sustained.