Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Kinser, JJ., and Poff, Senior Justice

VANCE W. CARTER, JR., ADMINISTRATOR OF
THE ESTATE OF VANCE W. CARTER, SR.,
DECEASED

v.  Record No. 991870    OPINION BY JUSTICE ELIZABETH B. LACY
                                        April 21, 2000
CHESTERFIELD COUNTY HEALTH
COMMISSION, D/B/A LUCY CORR
NURSING HOME

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

In this appeal, we consider whether the trial court properly concluded that a county health commission was immune from tort liability because it was entitled to the status of a municipal corporation and was performing a governmental function in the operation of a nursing home.

Vance W. Carter, Jr., Administrator of the Estate of Vance W. Carter, Sr., (the Administrator) filed a motion for judgment against the Chesterfield County Health Commission, d/b/a Lucy Corr Nursing Home, (the Commission) and others alleging that negligent acts of the Commission's employees in treating or failing to treat the decedent resulted in his death.  The Commission filed a special plea of sovereign immunity.  Based on the pleadings, memoranda, and argument of counsel, the trial court ruled that the operation of the nursing home by the Commission was a governmental function and, therefore, entitled to sovereign immunity.  The trial

court dismissed the Administrator's claim against the Commission and granted the Administrator's motions to non-suit the remaining defendants.  We awarded the Administrator an appeal.

The Commission is a political subdivision created by a locality pursuant to statutory authorization.  We have held that such entities may be entitled to the status of a municipal corporation for purposes of immunity from tort liability in certain circumstances.  Virginia Elec. and Power Co. v. Hampton Redevelopment and Housing Authority, 217 Va. 30, 33, 225 S.E.2d 364, 367 (1976); Hampton Roads Sanitation Dist. v. Smith, 193 Va. 371, 377, 68 S.E.2d 497, 501 (1952). The parties generally agree that the Commission is entitled to the status of a municipal corporation.

Municipal corporations are immune from tort liability when performing governmental functions, but are not immune when exercising proprietary functions.  City of Richmond v. Long's Adm'rs, 58 Va. (17 Gratt.) 375, 379 (1867), rev'd on other grounds, First Va. Bank-Colonial v. Baker, 225 Va. 72, 301 S.E.2d 18 (1983).  The principles to be applied in determining whether a municipality is engaged in a proprietary or governmental function for purposes of immunity are well established.  A function is considered governmental if it is the exercise of an entity's political, discretionary, or

legislative authority.  If the function is a ministerial act, "assumed in consideration of the privileges conferred by . . . charter," and involves no discretion, it is proprietary.  Id.

The parties also agree that the Commission would be entitled to immunity if the operation of the nursing home were a governmental function.[*]  However, the Administrator asserts that the traditional analysis applied in determining whether a municipal function is proprietary or governmental is not applicable to entities such as the Commission because such "locally created commissions are further removed from the state" and, therefore, they "enjoy less protection than a municipality."  Rather, according to the Administrator, a new four-factor test for such locally created entities was enunciated and applied in Hampton Redevelopment and should be applied here.  We disagree with the Administrator.

In Hampton Redevelopment, the housing authority relied solely on the statutory declaration of governmental purpose contained in Code § 36-2(1) to establish that the operation and maintenance of the housing development was a governmental function.  The housing authority did not challenge the trial

---

[*] The Commission, interpreting language in Hampton Redevelopment, also argued that the governmental-proprietary analysis was not applicable to it and that it was entitled to the absolute immunity from tort liability enjoyed by Chesterfield County because it was created by the county, not

3

court's conclusion that, absent the statutory declaration, the operation of the project would be "'as a normal matter, a proprietary function.'" 217 Va. at 36, 225 S.E.2d at 369. This Court rejected the housing authority's argument and concluded that maintaining and operating the housing project was a proprietary function "under any interpretation of the rules for determining whether a particular function is governmental or proprietary." Id.

There is no indication in the Hampton Redevelopment opinion that the Court either intended to, or did, establish a new test for determining the nature of functions undertaken by entities such as the housing authority. Consequently, Hampton Redevelopment does not support the Administrator's contention that entities such as the Commission should be afforded less protection than municipalities in matters of tort immunity or that a different standard should be applied to such entities in considering matters of governmental or proprietary functions. Therefore, in resolving the case before us, we apply the same principles applied to municipalities.

Although the principles for differentiating governmental and proprietary functions are easily recited, as we have often noted, application of these principles "has occasioned much

by a municipality. This argument was not raised in the trial court, and we do not consider it here. Rule 5:25.

4

difficulty." Ashbury v. City of Norfolk, 152 Va. 278, 282,
147 S.E. 223, 224 (1929). Generally speaking, when the
allegedly negligent act is one involving the maintenance or
operation of the service being provided, the function is
deemed to be proprietary. Thus, a housing authority was not
entitled to immunity because the alleged negligence — the
location, installation, and maintenance of an electric
"switching point box" — was part of the operation and
maintenance of the housing project and therefore involved a
proprietary function of the housing authority. Hampton
Redevelopment, 217 Va. at 32, 225 S.E.2d at 366.

In contrast, we have held that municipalities are immune
from tort liability based on allegations of negligence in the
design of roads or streets or in the provision of hospital,
ambulance, garbage, and emergency street clearing services.
See Edwards v. City of Portsmouth, 237 Va. 167, 375 S.E.2d 747
(1989); Fenon v. Norfolk, 203 Va. 551, 125 S.E.2d 808 (1962);
City of Norfolk v. Hall, 175 Va. 545, 9 S.E.2d 356 (1940);
Ashbury, 152 Va. 278, 147 S.E. 223; Long, 58 Va. (17 Gratt.)
375. The allegations of negligence in those cases involved
acts performed in conjunction with the direct provision of the
governmental service. We variously described the functions at
issue as exercises of a municipality's discretion, Long, 58
Va. (17 Gratt.) at 379, activities undertaken for the common

5

good, id., or in the interest of public health and safety, Edwards, 237 Va. at 171, 375 S.E.2d at 750, and exercises of powers "delegated or imposed" upon the municipality. Id., 375 S.E.2d at 749.

The Administrator argues that the operation of the nursing home in this case is a proprietary function because fees were charged, the nursing home was not available for the benefit of all Chesterfield residents but "only a select few" (as well as non-Chesterfield County residents), the same service was available from private vendors, the nursing home chiefly served the poor rather than a general public need, and was "designed to privatize the County's nursing home business." These factors, as the Administrator correctly contends, were identified in Hampton Redevelopment as indicia of a proprietary function. However, as noted above, these factors did not create a new test and were not contested matters in that case.

More importantly, many of these same characteristics were raised and rejected as relevant indicia of proprietary functions in a subsequent case. In Edwards, the appellant argued that the City-provided emergency ambulance service was a proprietary function because such service was not needed for the health, safety, and welfare of the City, fees were charged for the service, the service benefited only those who chose to

use and pay for it rather than the general public, and the City was not the only provider of emergency ambulance service. 237 Va. at 170, 375 S.E.2d at 749. The Court in _Edwards_ rejected these arguments and stated that the test for establishing a proprietary function "cannot be whether the same thing is done by private entities" or whether a fee is charged. 237 Va. at 171-72, 375 S.E.2d at 750. Rather the test applied by the Court in _Edwards_ was "whether, in providing such services, the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens." _Id._ at 172, 375 S.E.2d at 750.

In light of the holding in _Edwards_, the Administrator's argument that the Commission was engaged in a proprietary function cannot be sustained simply on the basis that the Commission charged a fee and provided a service which was not available to every citizen in the county and was also available from private sources.

_Edwards_ is also instructive because of another similarity it shares with the instant case. In _Edwards_, former Code § 32.1-156 required the City to make a finding that the ambulance services were necessary to preserve, protect, and promote public health, safety, and general welfare prior to authorizing the ambulance service. In making that finding and

authorization, the City, according to Edwards, exercised its police powers and "the governmental aspect of the undertaking [was] controlling." 237 Va. at 172, 376 S.E.2d at 750.

As in Edwards, prior to creating the Commission, Chesterfield County was required to find that there was a public need for the Commission and that the nursing services were necessary to protect the public health and welfare. Code § 15.2-5202. The County's resolution stated that a public need existed for the establishment of the Commission, that the public health and welfare required the operation of public hospital facilities, "particularly nursing homes," and that the Commission was to operate the nursing home, hospital, or health center facility. While these declarations are not dispositive, they are more significant than the statutory declarations justifying expenditure of public funds cited in Hampton Redevelopment. As in Edwards, by enacting the resolution creating the Commission, the local government exercised its police power. Furthermore, the provision of nursing home services at issue here is of the same nature as the provision of emergency ambulance services in Edwards and the hospital services in Long, and unlike the safe maintenance and operation of a housing project at issue in Hampton Redevelopment.

8

Considering our prior cases and the record here, we conclude that the provision of nursing services by the Commission was not a ministerial act of a proprietary nature, but an exercise of the County's police power for the common good and, thus, was governmental in nature.

Finally, the Administrator argues that the trial court erred in failing to hold an evidentiary hearing because the record was insufficient to support a finding of immunity. This argument was primarily based on the Administrator's contention that the Commission "was required to introduce evidence that it met the Hampton Redevelopment test." As discussed above, that case did not establish a new test to be applied here. Therefore, we reject these assignments of error.

For the reasons stated, we conclude that the trial court did not err in holding that the Commission was entitled to immunity from tort liability in this case because the operation of a nursing home was a governmental function. Accordingly, the judgment of the trial court will be affirmed.

Affirmed.

9