PRESENT: All the Justices

DANIELL E. GAMBRELL

v.  Record No. 030295   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        March 5, 2004
CITY OF NORFOLK


                  FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Charles D. Griffith, Jr., Judge


     This appeal is from a judgment in favor of a defendant

municipal corporation in a personal injury action involving a

"slip and fall" accident on snow and ice in a city-owned parking

lot.  The dispositive issue is whether the circuit court erred

in sustaining the defendant's plea of sovereign immunity.  We

consider whether, at the time of the plaintiff's fall, the

municipality was exercising a "governmental function" during

snow removal operations after a snowstorm and, therefore, was

immune from liability for the plaintiff's injuries.

     The following facts are relevant to this appeal.  Daniell

E. Gambrell was an employee of Bank of America (the Bank) at one

of its offices in the City of Norfolk (the City).  The Bank

leased for its employees' use about 900 out of 1100 available

parking spaces in a parking lot owned and operated by the City

(the parking lot).  The Bank paid the City $375,000 per year for

the lease.  The Bank's employees parked their vehicles in the

parking lot and traveled to and from their place of employment in a "shuttle" bus.

On January 25, 2000, a snowstorm in the City resulted in an accumulation of 4.7 inches of snow. On January 26 and 27, 2000, the City closed the parking lot and instructed the Bank's employees to park their vehicles at a parking garage in a nearby shopping mall.

The following day, January 28, 2000, the City reopened the parking lot after informing the Bank that its employees could resume parking their vehicles there. On that date, as Gambrell was walking from her parked vehicle in the parking lot to the "shuttle bus pick-up area," she allegedly "slipped and fell" on "snow and ice" and sustained "serious and permanent injuries."

Gambrell filed a motion for judgment against the City alleging that she was injured as a result of the City's negligent failure to remove snow and ice from the parking lot and its failure to place warning signs "around said area." The City responded by filing, among other things, a "Special Plea of Governmental Immunity." The City contended that it was immune from liability for Gambrell's alleged injuries because they occurred during the City's exercise of its governmental function of "emergency snow and ice removal activities necessitated by a severe snowstorm."

The circuit court conducted a hearing and received evidence concerning the City's special plea. The City introduced into evidence meteorological records prepared by the National Climatic Data Center, which indicated that on January 25th, 2000, the high temperature in the City of Norfolk was 36 degrees Fahrenheit, the low temperature was 29 degrees Fahrenheit, and there was an accumulation of 4.7 inches of snow. From January 26 through January 27, 2000, the high temperatures ranged between 29 and 31 degrees Fahrenheit, and four inches of snow remained on the ground. On January 28, 2000, the high temperature was 33 degrees Fahrenheit, the low temperature was 19 degrees Fahrenheit, and there were three inches of snow on the ground.

John D. Snowden, Jr., the operations manager for the Division of Streets and Bridges of the City's Department of Public Works, testified regarding the City's snow removal plan. He explained that the snow removal plan, found in the City's Emergency Operations Manual, is activated when there are snow accumulations between one and two inches or whenever there is a possibility that the surfaces of the City's roads and bridges may freeze. Snowden stated that the City activated the snow removal plan from January 25 through January 28, 2000, and that the City's work crews were assigned only to snow and ice removal tasks during that entire time period.

Snowden also testified that the work crews worked 24 hours per day in two 12-hour shifts through January 27, 2000. The length of the work crews' shifts was reduced on January 28, 2000, because the main arteries of the City's roadways were clear and the work crews had begun to remove snow from the secondary streets. Snowden stated that no personnel could be allocated to remove snow from the City's public parking lots on January 28, 2000, because the secondary streets still needed to be cleared and freezing temperatures had prevented the snow from melting on those streets. Snowden also stated that the City lacked sufficient snow removal equipment to clear all the City's streets within a few days after a "major snowstorm," and that he considered a snowfall of 4.7 inches to be a "major snowstorm."

Linda C. Davis, administrator of the City's Division of Parking, also testified at the hearing on the special plea. She stated that the City and the Bank agreed to reopen the parking lot on January 28, 2000, with the "stipulation that all employees were [to be] told [that] there [were] still icy spots on the lot and that they should exercise caution when parking there."

Gambrell testified at the hearing that when she entered the parking lot in her vehicle on January 28, 2000, she observed that there was "ice and snow everywhere" in the parking lot. Gambrell stated, "[A]ll I saw was ice and snow. I didn't see

4

any cleared areas whatsoever." Gambrell also stated that it was daylight outside and that she could see where she was walking.

The circuit court sustained the City's special plea. In explaining its ruling, the circuit court stated that the City's "continued effort to dig out from the storm was a governmental function and subject to governmental immunity." Gambrell appeals from the circuit court's judgment.

Gambrell argues that the circuit court erred in sustaining the special plea. She asserts that the City's lease of spaces in the parking lot for pecuniary benefit and the City's maintenance of the lot are proprietary functions that do not immunize the City from tort liability. Gambrell contends that the governmental function of snow and ice removal was not the proximate cause of her injuries because the City had failed to clear the parking lot of snow and ice at the time she was injured. Gambrell further contends that any emergency situation that may have existed was no longer present on January 28, 2000.

In response, the City argues that the circuit court correctly sustained the special plea because the emergency removal of snow from the City's streets and public parking lots is a governmental function. The City contends that emergency conditions still existed on January 28, 2000, because three inches of snow remained on the ground and temperatures remained at or below the point of freezing. The City also asserts that

5

its lease of spaces in the parking lot for a fee did not affect the governmental character of its emergency snow removal activities. We agree with the City's arguments.

In considering the issue presented, we are guided by established principles. A plea of sovereign immunity presents distinct issues of fact that, if proved, create a bar to a party's alleged right of recovery. Whitley v. Commonwealth, 260 Va. 482, 493, 538 S.E.2d 296, 302 (2000); Tomlin v. McKenzie, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). The party advancing the sovereign immunity plea bears the burden of proving those issues of fact. Whitley, 260 Va. at 493, 538 S.E.2d at 302; Tomlin, 251 Va. at 480, 468 S.E.2d at 884.

In Virginia, municipal corporations exercise two types of functions, governmental and proprietary. Harrell v. City of Norfolk, 265 Va. 500, 502, 578 S.E.2d 756, 757 (2003); Niese v. City of Alexandria, 264 Va. 230, 238, 564 S.E.2d 127, 132 (2002); Fenon v. City of Norfolk, 203 Va. 551, 555, 125 S.E.2d 808, 811 (1962). A function is governmental in nature if it is directly related to the general health, safety, and welfare of the citizens. Niese, 264 Va. at 239, 564 S.E.2d at 132; Edwards v. City of Portsmouth, 237 Va. 167, 171, 375 S.E.2d 747, 750 (1989). In contrast, a function is proprietary in nature if it involves a privilege and power performed primarily for the benefit of the municipality. City of Virginia Beach v.

6

Carmichael Dev. Co., 259 Va. 493, 499, 527 S.E.2d 778, 782 (2000); Hoggard v. City of Richmond, 172 Va. 145, 147-48, 200 S.E. 610, 611 (1939).  As a general rule, when an allegedly negligent act involves the routine maintenance or operation of a service being provided by a municipality, the function is considered to be a proprietary one.  Carter v. Chesterfield County Health Comm'n, 259 Va. 588, 592, 527 S.E.2d 783, 785 (2000); Carmichael Dev. Co., 259 Va. at 499, 527 S.E.2d at 782; Woods v. Town of Marion, 245 Va. 44, 45, 425 S.E.2d 487, 488 (1993).

A municipality is immune from liability for negligence in the exercise of a governmental function, as well as for negligence in the failure to exercise a governmental function. Harrell, 265 Va. at 502, 578 S.E.2d at 757; Carmichael Dev. Co., 259 Va. at 499, 527 S.E.2d at 782; Woods, 245 Va. at 45, 425 S.E.2d at 488.  However, a municipality is liable, in the same manner as an individual or a private entity, for injuries resulting from negligence in the performance of proprietary functions.  Harrell, 265 Va. at 502, 578 S.E.2d at 757; Woods, 245 Va. at 45, 425 S.E.2d at 488.

Gambrell alleged in her motion for judgment that the City "negligently allowed snow and ice to remain on the [parking] lot, and negligently failed to place any warning signs or markings around said area."  At the hearing on the special plea,

7

the City did not dispute Gambrell's contentions that at the time of the accident, the parking lot had not been plowed and warning signs had not been placed in the lot. Thus, our consideration of the circuit court's ruling on the special plea is limited to the question whether the removal of snow and ice from a municipal parking lot and the placement of warning signs at the location of such snow and ice are governmental or proprietary functions.

We previously have considered cases in which a municipality was engaged in emergency snow removal operations at the time a plaintiff sustained an alleged injury. In Stanfield v. Peregoy, 245 Va. 339, 340, 429 S.E.2d 11, 11-12 (1993), the plaintiffs allegedly were injured when a bus in which they were riding collided with a city-owned truck that was engaged in spreading salt during a snowstorm. We held that the conduct of driving and spreading salt in a snowstorm was "an integral part of the governmental function of rendering the city streets safe for public travel." Id. at 344, 429 S.E.2d at 13.

Shortly before our decision in Stanfield, we reached the same conclusion in our holding in Bialk v. City of Hampton, 242 Va. 56, 405 S.E.2d 619 (1991). There, a plaintiff allegedly was injured when he was struck by snow propelled from the blade of a snowplow that was being operated by an employee of a municipal corporation. Id. at 57, 405 S.E.2d at 620. We concluded that

because the municipality's snow removal operations were actions taken for the common good in coping with an emergency, those actions involved the exercise of a governmental function. Id. at 59, 405 S.E.2d at 621.

The case before us also involves the actions of a municipality in the course of emergency snow removal operations. The evidence showed that the City activated its emergency snow removal plan after a major snowstorm occurred. Because freezing temperatures for three days after the snowstorm prevented the snow from melting, the City's work crews had to spend all their time clearing snow from the City's streets and were not able to remove snow from the City's public parking lots.

The City's decision to restrict its snow removal operations to its public streets, and its failure to place emergency warning signs in the parking lot, involved the City's exercise of a governmental, rather than a proprietary, function. We reach this conclusion because these actions and omissions occurred in the context of an extended period of snow emergency and dealt with the determination of priorities directly related to the general health, safety, and welfare of the citizens. See Niese, 264 Va. at 239, 564 S.E.2d at 132; Edwards, 237 Va. at 171, 375 S.E.2d at 750. Thus, those actions and omissions were functionally different and unrelated to the City's routine maintenance of municipal streets and parking lots, which

9

involves the exercise of a proprietary function.  See Carter, 259 Va. at 592, 527 S.E.2d at 785; Carmichael Dev. Co., 259 Va. at 499, 527 S.E.2d at 782; Woods, 245 Va. at 45; 425 S.E.2d at 488.

Our conclusion that the City was exercising a governmental, rather than a proprietary, function at the time of Gambrell's fall is not changed by the fact that the City charged the Bank fees for use of parking spaces in the parking lot.  The charging of fees did not alter the fundamental character of the municipal function at issue, because that function was not one of routine maintenance but one of implementation of an emergency snow removal plan for the general safety and welfare of the citizenry.  Thus, the governmental nature of the City's actions following the snowstorm is controlling.  See Carter, 259 Va. at 593, 527 S.E.2d at 786; Edwards, 237 Va. at 172, 375 S.E.2d at 750.  Accordingly, we conclude that the evidence was sufficient to support the circuit court's ruling sustaining the City's special plea of sovereign immunity.[*]

For these reasons, we will affirm the circuit court's judgment.

Affirmed.

---

[*] Based on our determination that the City was immune from liability for the injuries alleged by Gambrell in her motion for judgment, we need not consider Gambrell's additional claim that

10

the circuit court erred in sustaining the City's demurrer to the motion for judgment.