## COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Callins and Frucci
Argued at Salem, Virginia

PUBLISHED

MICHAEL CANTER

v.      Record No. 1779-23-3

COMMONWEALTH OF VIRGINIA

JT'S HAULING, LLC

v.      Record No. 1780-23-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
NOVEMBER 19, 2024

FROM THE CIRCUIT COURT OF SMYTH COUNTY
Deanis L. Simmons, Judge

Payton R. Johnson (Celeratus Legal, PLC, on brief), for appellants.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
Attorney General; Steven G. Popps, Deputy Attorney General;
Jacqueline C. Hedblom, Senior Assistant Attorney General, on brief),
for appellee.

On September 11, 2023, the Circuit Court of Smyth County ("circuit court") sustained pleas

in bar filed by the Commonwealth of Virginia ("Commonwealth") alleging sovereign immunity and

dismissed the Virginia Tort Claims Act ("VTCA") claim filed by Michael Canter ("Canter"), owner

and employee of JT's Hauling, LLC ("JT's Hauling") (collectively "appellants"). Appellants

claimed personal injury resulting from a motor vehicle accident on a portion of Interstate 81 in

Smyth County caused by the alleged gross negligence of VDOT for failing to safely maintain that

portion of the highway. On appeal, appellants argue that the circuit court erred by 1) sustaining

successive pleas in bar to both their original complaints as well as their amended complaints and

2) by not permitting further amendment of their complaints introducing the applicability of

*Commonwealth v. Muhwahhid*, 77 Va. App. 821 (2023), in support of their cause of action. For the following reasons, we affirm.

## I. BACKGROUND[1]

On November 12, 2020, Canter was operating a 2019 Peterbilt tractor and 2017 East Tandem flatbed trailer, both of which were titled to JT's Hauling, while traveling on Interstate 81 North in Smyth County. Around mile marker 34, Canter encountered a pool of water in the "left-hand" lane of the roadway that was only demarcated by "orange and white barrels" placed by the median. While crossing the water, Canter's tractor trailer veered left into the road's median and overturned. As a result, Canter sustained various injuries and the tractor trailer owned by JT's Hauling sustained significant property damage.

On October 31, 2022, appellants filed complaints pursuant to the VTCA alleging "gross negligence" by the Commonwealth and the Virginia Department of Transportation (VDOT)[2] for causing the dangerous water pooling at mile marker 34 of Interstate 81 that led to the motor vehicle accident. Appellants further asserted that the Commonwealth and VDOT "had notice of the problem at mile marker 34 in the North bound [sic] [lane] of Interstate 81 dating back to at least 2013." They also contended that "[t]here [we]re multiple reports of accidents at this location on social media and other sources" for several years. Finally, they alleged that even though the Commonwealth and VDOT were on notice, they still failed to remedy the dangerous condition. Hence, appellants claimed that the Commonwealth and VDOT's "failure to repair this

---

[1] As the circuit court did not take evidence in support of the plea in bar, we review its decision with "the facts stated in the plaintiff's [complaint] . . . deemed true." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).

[2] VDOT is not a party to this appeal.

roadway after so many accidents reflects a total disregard for the health and safety of the motorist[s]" using the highway.

On November 17, 2022, the Commonwealth and VDOT filed pleas in bar asserting that appellants' claims were barred by sovereign immunity. The circuit court conducted a hearing on the pleas in bar on January 17, 2023. On January 24, 2023, the circuit court sustained the pleas in bar to the original complaints, dismissing the claims against VDOT with prejudice and the claims against the Commonwealth without prejudice.

On February 7, 2023, appellants filed amended complaints against the Commonwealth. In the amended complaints, appellants again alleged that the Commonwealth was aware of the dangerous condition for several years. However, in the amended complaints, appellants further contended that the Commonwealth, "acting through its agents, employees and representatives of [VDOT]," "had a duty to maintain Interstate 81 and keep it in a condition that is safe for the motorists using the roadway" and "knew or should have known that water accumulated on this lane of Interstate 81 North at mile marker 34 when it rained and failed to place a warning on the roadway approaching the location of the dangerous condition." The amended complaints further alleged that the only steps taken by the Commonwealth to remedy the problem "was the placing of orange and white safety barrels in the median." On February 16, 2023, the Commonwealth responded to the amended complaints by filing second pleas in bar to the amended complaints on the grounds that appellants' claims were once again barred by sovereign immunity.

On June 6, 2023, the circuit court conducted a hearing on the Commonwealth's second pleas in bar.[3] On August 4, 2023, appellants filed a letter in the circuit court referencing this Court's opinion in *Commonwealth v. Muwahhid*, 77 Va. App. 821 (2023), and contending that the opinion "support[ed]" their arguments in opposition to the pleas in bar. Four days later, the

---

[3] No transcript for this hearing was filed with this Court.

Commonwealth responded by asserting in its own letter that "*Muwahhid* fully support[ed]" the Commonwealth's pleas in bar as "the Commonwealth [in that case] did not assert VTCA legislative function immunity below, [but] the Court of Appeals [in that case] recognized this doctrine's continuing vitality."

On August 16, 2023, the circuit court issued a letter opinion sustaining the demurrers and pleas in bar and dismissing appellants' claims with prejudice after considering "the arguments of counsel in conjunction with the aforesaid letters of [appellants and the Commonwealth], and the caselaw submitted."  The circuit court then entered a final order on September 11, 2023, dismissing appellants' claims, consistent with the court's letter opinion.  Appellants appealed.

II. ANALYSIS

A. *Standard of Review*

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)).  "Two possible standards of review apply, depending on whether the plea's proponent elects to meet [its] burden by presenting evidence or [by] relying on the pleadings." *Id.*  "In the latter situation, 'where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented.  In doing so, the facts stated in the plaintiff's [complaint] are deemed true.'" *Id.* (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).  Under this approach, review of the circuit court's judgment is "functionally de novo." *Id.*  Here, "[b]ecause no evidence was presented on the plea in bar, 'the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented.'" *Kinsey v. Va. Elec. & Power Co.*, 300 Va. 124, 130 (2021) (quoting *Massenburg*, 298 Va. at 216).

In either scenario, "[t]he existence of sovereign immunity is a question of law that is reviewed de novo." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008) (quoting *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004)).

B. *The circuit court did not err in sustaining the Commonwealth's pleas in bar, as the maintenance of the Interstate Highway System in Virginia is a "legislative function" for which the Commonwealth enjoys sovereign immunity.*[4]

Appellants assert that the circuit court erred in sustaining the pleas in bar against their claims in the amended complaints because 1) the complaints advanced causes of action that "would lead a private person to be liable" and thus the Commonwealth could be held liable under the VTCA and 2) "sovereign immunity does not apply to the maintenance of a nuisance under the legislative function exception" to the VTCA. We disagree.

To resolve these appeals, we must first analyze the effect of the VTCA on the doctrine of sovereign immunity. To begin, the doctrine of sovereign immunity is derived from "an axiom of English law that 'the law ascribes to the king the attribute of sovereignty,' and thus, 'no court can have jurisdiction over him' because 'jurisdiction implies superiority of power.'" *Clark v. Va. Dep't of State Police*, 292 Va. 725, 728 (2016) (quoting 1 William Blackstone, *Commentaries* *241-42). From this axiom, it follows that "[a]t common law, the Commonwealth was immune from liability for torts committed by its officers, employees and agents." *Doud v. Commonwealth*, 282 Va. 317, 320 (2011) (quoting *VEPCO v. Hampton*

---

[4] Note, as conceded at oral argument, appellants have waived their first assignment of error by 1) failing to object to the circuit court's ruling on the demurrers and failing to incorporate by reference the allegations of the original complaints in the amended complaints, as required by Code § 8.01-273(B); 2) failing to contemporaneously object to the circuit court's ruling on the demurrers and pleas in bar to the first complaints; and 3) failing to address one of the independent grounds for the circuit court's decision as to the initial complaints, which was that the complaints failed to allege a valid respondeat superior claim because they failed to allege a tortious act or omission by an employee of the Commonwealth. *See, e.g.*, *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 421-22 (2012) (finding that failure to assign error to an independent basis articulated by a circuit court for its judgment prevents review of the judgment on appeal); Rule 5A:18.

*Redevelopment & Hous. Auth.*, 217 Va. 30, 32-33 (1976)).  And this "immunity continue[d] to apply in the absence of a legislative waiver by which the Commonwealth consent[ed] to be sued in its own courts."  *Id.*

"In 1981, the General Assembly enacted the [VTCA] which provides for an express, limited waiver of the Commonwealth's immunity from tort claims."  *Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244 (2004) (quoting *Patten v. Commonwealth*, 262 Va. 654, 658 (2001)).  Our Supreme Court has previously observed that "in the VTCA, the Commonwealth has waived its sovereign immunity for tort claims in the circumstances to which the statute applies, but the waiver is a limited one and the VTCA, being an enactment in derogation of the common law, is strictly construed."  *Doud*, 282 Va. at 321.  Also, in interpreting the VTCA's waiver, we may not "place any limitation on the clear and comprehensive language of the statute, or . . . create an exception where none exists under the guise of statutory construction," as to do so "would be to defeat the purpose of the enactment and to engage in judicial legislation."  *Phelan v. Commonwealth*, 291 Va. 192, 195 (2016).

Specifically, the VTCA, provides in pertinent part that

> the Commonwealth shall be liable for claims for money . . . on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment under circumstances where the Commonwealth . . . , *if a private person*, would be liable to the claimant for such damage, loss, injury or death.

*Commonwealth v. Muwahhid*, 77 Va. App. 821, 829 (2023) (quoting Code § 8.01-195.3).  The VTCA also enumerates several exceptions to the waiver of sovereign immunity and where an exception applies, the Commonwealth retains its sovereign immunity from tort claims.  Code § 8.01-195.3(1)-(7).  One such exception is the

> "legislative-function exception," [which] [preserves] immunity for "[a]ny claim based upon an act or omission of the General

> Assembly or district commission of any transportation district, or
> any member of staff thereof acting in his official capacity, or to the
> legislative function of any agency subject to the provisions of this
> article."

*Muwahhid*, 77 Va. App. at 830 (quoting Code § 8.01-195.3(2)). Although the VTCA does not

define what constitutes a "legislative function," our Supreme Court has previously held that the

term "legislative function" encompasses "the decision-making process by the municipality or the

state agency [that] entails the exercise of discretion . . . [including] determin[ing] whether public

funds should be expended." *Maddox v. Commonwealth*, 267 Va. 657, 663 (2004) (quoting Code

§ 8.01-195.3(2)). In addition, even though we do not "equate a municipality's exercise of a

governmental function with the exercise of a legislative function by an agency of the

Commonwealth," we may consult such caselaw to further guide our decision on what actions

constitute a "legislative function." *Id.*

Municipalities in Virginia "exercise two types of functions: governmental and

proprietary." *Cunningham*, 268 Va. at 633; *see also Hoggard v. City of Richmond*, 172 Va. 145,

148 (1939) (noting this functional distinction). "A function is governmental in nature if it is

directly related to the general health, safety, and welfare of the citizens." *Robertson v. W. Va.*

*Water Auth.*, 287 Va. 158, 160 (2014). A governmental function also "entails the exercise of an

entity's political, discretionary, or *legislative authority*." *Cunningham*, 268 Va. at 634 (emphasis

added).

Here, "[t]he legislature has delegated broad powers to the highway officials of this state

and has vested them with wide discretion in the discharge of their duties with respect to the

construction, improvement, and maintenance of highways." *Ord v. Fugate*, 207 Va. 752, 759

(1967). Moreover, the General Assembly has provided that "[t]he primary state highway

- 7 -

system[5] [in Virginia] shall be constructed *and maintained* by the Commonwealth under the direction and supervision of the Board and the Commissioner of Highways." Code § 33.2-310 (emphasis added). Finally, the General Assembly also permits "the [Commonwealth Transportation] Board [to] plan, designate, acquire, open, construct, reconstruct, improve, *maintain*, discontinue, abandon, and regulate the use of the Interstate System[6] *in the same manner* in which it is now or may be authorized to . . . regulate the use of the *primary state highway system*." Code § 33.2-300 (emphases added).

Conversely, "a function is proprietary in nature if it involves a privilege and power performed primarily for the benefit of the municipality." *Gambrell v. City of Norfolk*, 267 Va. 353, 357 (2004). Virginia "municipal corporations are immune from liability 'when performing governmental functions, but are not when exercising proprietary functions.'" *Jean Moreau & Assocs. v. Health Ctr. Comm'n*, 283 Va. 128, 137-38 (2012) (quoting *Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va. 588, 590 (2000)). "Where governmental and proprietary functions coincide, the governmental function is the overriding factor." *Transp., Inc. v. City of Falls Church*, 219 Va. 1004, 1006 (1979) (quoting *Taylor v. City of Newport News*, 214 Va. 9, 10 (1973)). And, in this context our Supreme Court has found that with respect to municipal governments,

> the *planning, designing, laying out, and construction of streets and roads* has been held to be a governmental function, while the *routine maintenance of existing streets* has been held to be proprietary, subjecting a city to liability for its failure to maintain

---

[5] The term "'[p]rimary state highway system' consists of all highways and bridges under the jurisdiction and control of the Commonwealth Transportation Board and the Commissioner of Highways and not in the secondary state highway system." Code § 33.2-100.

[6] The Interstate System is correspondingly defined as "[t]he Dwight D. Eisenhower National System of Interstate and Defense Highways within the United States (including the District of Columbia and Puerto Rico), [which] consists of highways designed, located, and selected in accordance with [23 U.S.C. § 103(c)(4)(B)]." 23 U.S.C. § 103(c); Code § 33.2-100 ("'Interstate System' means the same as that term is defined in 23 U.S.C. § 103(c).").

> its streets in good repair and in safe condition for travel, free from
> dangerous defects or obstructions.[7]

*Bialk v. City of Hampton*, 242 Va. 56, 58 (1991) (emphases added) (internal citation omitted);

*see, e.g.*, *Gambrell*, 267 Va. at 357-58.  Thus, "as a general rule, when an allegedly negligent act

involves the *routine maintenance* or operation of a service being provided by a municipality, the

function is considered to be a proprietary one."  *Id.*  However, our Supreme Court has also

"previously held that 'not every municipal activity related to street maintenance is proprietary.'"

*Harrell v. City of Norfolk*, 265 Va. 500, 503 (2003) (quoting *Transp., Inc.*, 219 Va. at 1005).  For

example,

> [t]raffic lights, blinking lights, warning signals, roadway markings,
> railings, barriers, guardrails, curbings, and like devices are all
> designed to control and regulate traffic and to insure its orderly and
> safe flow on the streets.  A determination of the need for such
> devices and the decision to install or not to install them calls for
> the exercise of discretion . . . .  In the exercise of th[is] discretion
> and in making a judgment, the city is performing a governmental
> function.

*Freeman v. City of Norfolk*, 221 Va. 57, 60 (1980).  Hence, where highway and street

maintenance performed by a municipality is concerned, whether such activity is governmental or

---

[7] In the constitutional context, the Supreme Court of Virginia has found consistently that "[t]he construction, maintenance, and repair of public highways is a governmental function, which belongs primarily to, and may be exercised by, the state and state legislature."  *Almond v. Gilmer*, 188 Va. 822, 836 (1949); *see, e.g.*, *Montgomery Cnty. v. Va. Dep't of Rail & Pub. Transp.*, 282 Va. 422, 437 (2011) ("Indeed, we have made clear that '[t]he construction, maintenance and operation of a highway system is a governmental function.'" (quoting *Almond*, 188 Va. at 836)); *Hinchey v. Ogden*, 226 Va. 234, 238 (1983) ("The parties recognize that we have consistently held that the construction, improvement, operation, and maintenance of public highways is a governmental rather than a proprietary function."); *Main v. Dep't of Highways*, 206 Va. 143, 150 (1965) ("In *Almond v. Gilmer*, 188 Va. 822, 836 [(1949)], we held that the construction, maintenance and operation of a highway system is a governmental function.").  However, as none of these cases involved a question of sovereign immunity, we note these authorities as merely persuasive to the question at bar.

proprietary is largely determined by what the maintenance concerns and the discretion exercised by the governmental entity.[8]  *See Bialk*, 242 Va. at 58.

Moving forward, in 2004, the Supreme Court of Virginia interpreted the legislative-function exception to the application of the VTCA to extend to claims arising from injuries caused by the Commonwealth's alleged failure to maintain a sidewalk where the plaintiff child was harmed riding his bicycle.  *See Maddox*, 267 Va. at 663.  In *Maddox*, the plaintiff asserted that the failure to maintain the sidewalk constituted a nuisance.  *Id.*  But the Supreme Court reasoned that, although it did not "equate a municipality's exercise of a governmental function with the exercise of a legislative function by an agency of the Commonwealth," the Commonwealth was immune from the suit as "design of a sidewalk by an agency of the Commonwealth is a legislative function."  *Id.*  It further noted that the Commonwealth had statutory authority "over the supervision, management, construction, improvement, and maintenance of public highways and roads."  *Id.* at 662.  From this statutory authorization, the Court further reasoned that in "[d]eciding whether the plan and design of the sidewalk at issue . . . called for the exercise of discretion by an agency of the Commonwealth," the Commonwealth was required "to determine whether public funds should be expended to install

---

[8] *Compare Bialk*, 242 Va. at 59 (holding that sovereign immunity barred a plaintiff's negligence claim arising from a city's snow-removal street maintenance where the "City's snow-removal operations in this case were acts done for the common good in coping with an emergency, [constituting] the exercise of a governmental function"), *and Transp., Inc.*, 219 Va. at 1006 (holding that though "the repair of a malfunctioning traffic signal bears some relationship to street maintenance and displays, therefore, a characteristic of a proprietary function," "a system of signals is designed to regulate traffic, and its dominant purpose is to reduce loss of life, limb, and property" causing this repair to overlap with a governmental function, immunizing the city from negligence claims stemming from the repair), *with Woods v. Town of Marion*, 245 Va. 44, 45 (1993) (finding that sovereign immunity did not bar negligence claims related to a municipality's failure to maintain streets by not removing ice that had formed upon one of its streets when water leaked from pipes of the town's waterworks), *and Hall*, 175 Va. at 553-54 (holding that the repair of two severe depressions or dips in the general road surface in question fell under the city's maintenance duties and were a proprietary function).

those particular safety features." *Id.* Hence, the Court concluded that in *Maddox*, the Commonwealth was immune from suit because it was required to exercise its discretion. *See id.* at 664.

As raised on brief by appellants, this Court has recently opined concerning the legislative-function exception in Code 8.01-195.3(2) and the related distinction between "governmental" and "legislative" functions for purposes of the VTCA. *Muwahhid*, 77 Va. App. at 835. In *Commonwealth v. Muwahhid*, this Court affirmed a circuit court's decision that sovereign immunity did not apply to immunize the Commonwealth from a negligence claim by an inmate's wife who asserted that the employees of a correctional center "acted wrongfully" by subjecting her to several searches prior to her visits with her husband. *Id.* at 826. In response, the Commonwealth contended that its actions in executing the searches of the inmate's wife constituted a "governmental function" for which sovereign immunity applied. *Id.* at 827, 835. Specifically, the Commonwealth asserted that the actions taken by the correctional officers in searching the wife were in execution of the correctional center's "policies and procedures" and thus constituted a "legislative function." *Id.* at 835. We found that argument unavailing because "the corrections officers' alleged actions did not involve discretionary policy decisions" such as "determin[ing] whether public funds should be expended," thereby preventing their actions from constituting "a legislative function." *Id.* (quoting *Maddox*, 267 Va. at 663).

To consider appellants' assignment of error concerning the application of *Muwahhid* to the facts alleged here, we must answer a question of first impression: does the text of the VTCA and the corresponding caselaw permit the Commonwealth and its "agents, employees and representatives" to enjoy sovereign immunity from claims asserting gross negligence for failing to *maintain* the Interstate Highway System in Virginia? We answer that question in the affirmative.

First, when strictly interpreting the waiver of the Commonwealth's sovereign immunity, we hold that the General Assembly has enacted specific "*legislative authority*," *Cunningham*, 268 Va. at 634 (emphasis added), empowering the Commonwealth to maintain both the Interstate and state highway systems in Virginia and that the performance of such maintenance constitutes a "legislative function," *Muwahhid*, 77 Va. App. at 830 (quoting Code § 8.01-195.3(2)).  In support, we note that the Commonwealth has been "delegated broad powers" and "vested . . . with wide discretion . . . with respect to the construction, improvement, and maintenance of highways."  *Ord*, 207 Va. at 759.  From this general authority, the General Assembly specifically vested the Commonwealth with the authority to maintain "[t]he primary state highway system [in Virginia]," Code § 33.2-310, and that this specific authority also extended "in the same manner" to "maintain[ing]" highways in the "Interstate System."  Code § 33.2-300.  Hence, the Commonwealth's "decision-making process" concerning how and which sections of highway, both state and Interstate, are to be maintained and which ones should not in any given year "entails the exercise of discretion . . . [including] determin[ing] whether public funds should be expended" per these authorizing provisions.  *Maddox*, 267 Va. at 663.[9]

We further find that appellants' reliance on *Muwahhid* and similar cases discussing sovereign immunity concerning the maintenance of highways and streets in a municipality is unavailing in the context of sovereign immunity as it relates to the Commonwealth and its agencies.  Moreover, in *Muwahhid*, we found that correctional center officers' execution of "policies and procedures" in conducting searches did not constitute a "legislative function."  77 Va. App. at 835.  We reached that result because the actions of the correctional officers did not

---

[9] This holding in no way "equate[s] a municipality's exercise of a governmental function with the exercise of a legislative function by an agency of the Commonwealth," *Maddox*, 267 Va. at 663, as we find that only actions taken by an agency of the Commonwealth, explicitly enumerated in its *authorizing statutes*, constitute a "legislative function" under the VTCA, Code § 8.01-195.3(2).

involve discretionary policy decisions such as "determin[ing] whether public funds should be expended." Instead, we found their conduct was pursuant to "[t]he execution of policies and procedures [and was] not a legislative function." *Id.* (quoting *Maddox*, 267 Va. at 663). Moreover, the Commonwealth raised *no specific* statutory authority and instead chose to rest its sovereign immunity claims on the "municipal-liability test" alone. *Id.* at 832.

Here, unlike *Muwahhid*, the Commonwealth was *explicitly* authorized by statute to maintain Virginia's Interstate and primary state highways. Code §§ 33.2-300, -310. Thus, the cases at bar are more similar to *Maddox*, where the Supreme Court specifically noted statutory authority that permitted the Commonwealth's specific actions before concluding that in performing those actions the Commonwealth exercised the "discretion" necessary to constitute a "legislative function." *Maddox*, 267 Va. at 662, 663. Hence, since any statutory authorization for the specific conduct in question was missing in *Muwahhid*, we find it distinguishable from the facts here.[10]

Further, appellants' contention that "the *routine maintenance of existing streets* has been held to be proprietary" instead of "governmental" in support of their argument on brief cuts both ways. *Bialk*, 242 Va. at 58 (emphasis added). Although "[a]s a general rule, when an allegedly negligent act involves the *routine maintenance* or operation of a service being provided by a municipality, the function is considered to be a proprietary one," *Gambrell*, 267 Va. at 357-58, "not every municipal activity related to street maintenance is proprietary," *Harrell*, 265 Va. at 503 (quoting *Transp., Inc.*, 219 Va. at 1005).

---

[10] Thus, we also conclude that the circuit court did not err in declining to permit appellants to amend their complaints to assert *Muwahhid*'s application, as any error from that judgment would be merely "harmless error." *Spruill v. Garcia*, 298 Va. 120, 127-28 (2019) (quoting *Commonwealth v. Swann*, 290 Va. 194, 201 (2015) (per curiam)).

Here, appellants alleged that the Commonwealth's decision to only place "orange and white barrels in the median" near where the accident occurred, instead of undertaking repairs or a more extensive warning, constituted gross negligence. However, this "determination of the need for such devices" to serve as "warning signals[] [or] roadway markings" has been previously found to constitute an "exercise of discretion" that is a "governmental function." *Freeman*, 221 Va. at 60. Also, since such an "exercise of discretion" was found to constitute a "legislative function" in *Maddox*, 267 Va. at 663, the caselaw cited by appellants on brief arguably supports the Commonwealth's position that it is immune from appellants' claims.

In addition, "where governmental and proprietary functions coincide, the governmental function is the overriding factor." *Transp., Inc.*, 219 Va. at 1006 (quoting *Taylor*, 214 Va. at 10). Hence, the Commonwealth's decision to place "orange and white barrels in the median" near where the accident occurred, was "directly related to the general health, safety, and welfare of the citizens" by attempting to warn motorists of potential danger. *Robertson*, 287 Va. at 160. Thus, as detailed above, this discretionary decision "entail[ed] the exercise of [the Commonwealth's] . . . *legislative authority*." *Cunningham*, 268 Va. at 634 (emphasis added). Moreover, since arguably, there is an overlap between the "governmental and proprietary functions," *Transp., Inc.*, 219 Va. at 1006, involved in this maintenance, this circumstance provides additional support for our conclusion that the Commonwealth is immunized from this suit.

Finally, since we find that the Commonwealth exercised a legislative function in deciding how to maintain the section of the interstate highway at issue consistent with its authorizing statutes, we conclude that the circuit court did not err in sustaining the Commonwealth's sovereign immunity pleas in bar and dismissing appellants' claims with prejudice.

### III. CONCLUSION

We conclude that appellants have failed to show that the circuit court erred in sustaining the pleas in bar against their VTCA claims because the legislative-function exception applies to immunize the Commonwealth. Consistent with the text of Code § 8.01-195.3(2) and the Supreme Court of Virginia's opinion in *Maddox*, we hold that since the General Assembly has delegated the construction, repair, and maintenance of Virginia's Interstate Highway System to the Commonwealth in Code §§ 33.2-300, -310 and decisions related thereto are an "exercise of discretion," *Freeman*, 221 Va. at 60, related to the Commonwealth's "legislative authority," *Cunningham*, 268 Va. at 634, the Commonwealth's actions constituted a "legislative function" within the scope of the exception, *Maddox*, 267 Va. at 662, 663. As a result, sovereign immunity applies to the Commonwealth's actions in this case, and we accordingly affirm the circuit court's judgment.

*Affirmed.*